**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Eric Michael MISKOVITCH, Appellant.**

Superior Court of Pennsylvania.

Argued May 16, 2012.

Filed March 1, 2013.

Reargument Denied April 29, 2013.

Chris R. Eyster, Pittsburgh, for appellant.

Michael W. Sreily, Deputy District Attorney and Sandra Preuhs, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

BEFORE: MUSMANNO, J., BENDER, J., and STRASSBURGER, J.*

OPINION BY BENDER, J.

Appellant, Eric Michael Miskovitch, appeals from the judgment of sentence of December 14, 2009. Appellant presents several claims, alleging violations of his speedy trial, due process, and double jeopardy rights. Appellant also claims that he was tried in an improper venue. After careful review, we affirm.

The trial court summarized the facts of the case as follows:

The facts of that case were that on August 1, 2004, Miskovitch went into a McDonald's Restaurant in Leechburg, Pennsylvania (Westmoreland County), placed an order and then demanded that the cashier, Ashley Israel [ (Israel) ], turn over all of the money to him that was in the register. Miskovitch lifted up his shirt and showed Israel that he had a gun and she became nervous and called over her manager, Sue Miller [ (Miller) ]. Miskovitch also showed Miller the gun and Miller then gave him the money that was in that register. Miskovitch then said he knew that McDonald's made more money than that and demanded the money from the other register. That register was empty and then Miskovitch pulled out his gun, pointed it at Miller, and took her to the office and demanded that she open the safe. He told her she had fifty seconds to do so and then began counting backwards. Miskovitch's counting out loud made her nervous and she could not open the safe. When Miskovitch realized that the safe was not going to be opened, he ran from the restaurant, got in his car and fled from the scene.

Gregory Rupp [ (Rupp) ], who had gone to that McDonald's with his wife and daughter, witnessed the robbery and proceeded to chase Miskovitch once he ran out of the restaurant. He saw him go outside, get into his car which he had stolen the day before, then followed him while dialing 911 to report what he had seen and the fact that he was chasing after this robber. During the course of this chase, Miskovitch slammed on his brakes, put his car in reverse, and ran into Rupp's car and then he fled from the accident scene. The car that Miskovitch used was abandoned in Fawn Township, Allegheny County, and was discovered approximately one-half hour after the robbery.

Trial Court Opinion (TCO), 6/28/11, at 5–6.

The Commonwealth charged Appellant by criminal information on January 21,

* Retired Senior Judge assigned to the Superior Court.

2005 with robbery (victim Israel), aggravated assault (victim Rupp), receiving stolen property (vehicle), theft by unlawful taking (McDonald's property), receiving stolen property (McDonald's property), and two counts of simple assault (victims Miller and Israel), stemming from the the robbery of the Leechburg McDonald's. Following a complicated and unusually long procedural history, Appellant was ultimately tried by a jury beginning on September 15, 2009. On September 18, 2009, the jury convicted Appellant of robbery and receiving stolen property, but acquitted him of the aggravated assault charge.[1] On December 14, 2009, trial court sentenced Appellant to 5–10 years' incarceration.

Appellant now presents the following questions for our review:

1. Whether the Defendant's speedy trial rights under Pa.R.Crim.P. 600 were violated?

2. Whether the Defendant's speedy trial rights under the Sixth Amendment to the United States Constitution were violated?

3. Whether the trial court deprived Defendant of due process of law in reinstructing the jury on robbery where the jury requested a charge on aggravated assault?

4. Whether the trial court deprived Defendant of due process of law in giving an improper analogy of reasonable doubt during the court's final instructions to the jury?

5. Whether the Defendant was tried multiple times for offenses stemming from the same criminal episode in contravention of 18 Pa.C.S.A. § 110 and the double jeopardy clause of the U.S. Constitution?

6. Whether Mr. Miskovitch was improperly prosecuted in a jurisdiction without venue that being Allegheny County for a Westmoreland County offense (receiving stolen property)?

Appellant's Brief, at 3.

## Rule 600 and Constitutional Speedy Trial Rights

Although initially charged by criminal complaint on August 3, 2004, and arrested on August 5, 2004, Appellant was not tried for more than five years. As early as January 25, 2006, Appellant alleged a violation of his speedy trial rights and filed a counseled motion to dismiss pursuant to Pa.R.Crim.P. 600. The motion was denied at a hearing held that same day. On April 21, 2009, Appellant filed another counseled motion to dismiss the charges, premised upon a violation of his state and federal speedy trial rights. In his first two issues raised in the instant direct appeal, Appellant contends that the trial court abused its discretion by dismissing his Rule 600 motion on January 25, 2006 and, furthermore, that his speedy trial rights under the 6th and 14th Amendments to the United States Constitution had been violated because he was not tried for over five years, as set forth in his 2009 motion to dismiss.

Appellant notes that at the time the Rule 600 motion was filed, 539 days had elapsed since the time of his arrest. Appellant also contends that the certified record is devoid of any defense postponements or other excludable time during the applicable time period. Moreover, Appellant alleges that the Commonwealth failed

---

1. The remaining four counts had been withdrawn prior to the commencement of the trial.

to exercise due diligence in bringing him to trial as required by Rule 600.

Regarding his constitutional claims, Appellant asserts that the five-year delay in bringing the case to trial was so shockingly long as to effectively constitute a *per se* or presumptive violation of his speedy trial rights. Alternatively, Appellant asserts that deprivation of his speedy trial rights was evidenced by his numerous objections to the nearly perpetual succession of delays that plagued this case. He claims that he was substantially prejudiced by the loss of both exculpatory evidence and witnesses.

In its Pa.R.A.P. 1925(b) opinion, the trial court states that Appellant's competency to stand trial was at issue during the applicable time period, and that "delay in bringing a defendant to trial which is attributable to his incompetency to stand trial is excludable for the purpose of the speedy trial determination." Trial Court Opinion (TCO), 6/28/11, at 15–16 (citing *Commonwealth v. Trill*, 374 Pa.Super. 549, 543 A.2d 1106 (1988)). The trial court further reasons that even if Appellant makes "a claim of the violation of his speedy trial rights during the period of his incompetency, that such a claim is irrelevant since the Commonwealth was precluded from trying an individual who was incompetent to stand trial." *Id.* at 16–17. Though the trial court acknowledges that Appellant made both in-court declarations and written statements indicating that "he did not consent to a delay and suggesting a violation of his Rule 600 rights, those claims are irrelevant since his competency had not been established at any point in time prior to the time that he was scheduled for his trial in September of 2009." *Id.* at 17.

■ "In evaluating speedy trial issues, our standard of review is whether the trial court abused its discretion, and our scope of review is limited to the trial court's findings and the evidence on the record, viewed in the light most favorable to the prevailing party." *Commonwealth v. Wholaver*, 605 Pa. 325, 989 A.2d 883, 899 (2010), *cert. denied*, —— U.S. ——, 131 S.Ct. 332, 178 L.Ed.2d 216 (U.S.2010) (citing *Commonwealth v. Meadius*, 582 Pa. 174, 870 A.2d 802, 805 (2005)). "Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration." *Commonwealth v. Hunt*, 858 A.2d 1234, 1238 (Pa.Super.2004) (quoting *Commonwealth v. Krick*, 164 Pa.Super. 516, 67 A.2d 746, 749 (1949)). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused." *Id.* (quoting *Commonwealth v. Jones*, 826 A.2d 900, 907 (Pa.Super.2003) (*en banc*)).

Summarizing Rule 600, our Supreme Court has held that:

> Rule 600(A)(3) provides trial in a court case where a written complaint is filed against the defendant who is at liberty on bail must commence no later than 365 days from when the complaint is filed. Certain periods are excludable from computation of the period for commencement of trial, including delay resulting from the unavailability of the defendant or his attorney, or any continuance granted at the request of the defendant and his attorney. Pa.R.Crim.P. 600(C)(3)(a)-(b). If the court determines the Commonwealth exercised due diligence, and the circumstances occasioning the postponement were beyond the Commonwealth's control, the motion to

dismiss on speedy trial grounds shall be denied. *Id.*, 600(G).

*Wholaver*, 989 A.2d at 899.

■ The starting point for calculating delay for Rule 600 purposes is the date of filing of the criminal complaint, which occurred in this case on August 3, 2004. Appellant's Rule 600 claim was raised on January 25, 2006, 540 days after the filing of the complaint, or 175 days after the mechanical run date for Rule 600 purposes. Two of those days were excludable time under Pa.R.Crim.P. 600(C)(1) (designating post-complaint, pre-arrest delay as excludable time for Rule 600 purposes, provided "the defendant could not be apprehended because his or her whereabouts were unknown and could not be determined by due diligence." Appellant was not arrested until August 5, 2004).

Appellant filed a counseled postponement on June 8, 2005, whereby trial was rescheduled for October 24, 2005. Appellant's counsel at that time, Warner Mariani, was forced to withdraw from representing Appellant due an order issued by our Supreme Court that barred judicial law clerks from handling cases in the same division to which their Judge was assigned. The Supreme Court made the new rule effective on September 1, 2005.

New counsel was appointed, and on September 14, 2005, another postponement was filed,[2] delaying the start of trial until January 23, 2006. The time period from June 8, 2005, until January 23, 2006, a delay solely attributable to defense postponements, totaled 234 days. As such, when Appellant filed his Rule 600 motion on January 25, 2006, there were a total of 236 days of excludable time pursuant to Pa.R.Crim.P. 600(C)(3)(b). Accordingly, only 304 days (540 days–236 excludable days) of the 365 days specified by Rule 600(A)(3) had passed when Appellant filed his Rule 600 motion on January 25, 2006. Accordingly, we conclude the trial court did not abuse its discretion when it denied Appellant's Rule 600 motion to dismiss on that date.

Appellant also claims his Sixth Amendment speedy trial rights were violated because he was not tried for over five years. "The Sixth Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution guarantee a criminal defendant the right to a speedy trial." *Commonwealth v. DeBlase*, 542 Pa. 22, 665 A.2d 427, 432 (1995). These state and federal constitutional rights have long been held to be coextensive by our Supreme Court. *See Com-*

---

2. Prior to our remand of this matter for completion of the record, the trial docket did not reflect the September 14, 2005 continuance. Following remand, the trial court added to the record a letter from then counsel, Richard Narvin, Esq. The letter, which described the timeline of Narvin's representation of Appellant, indicated that Narvin entered his appearance on that date and simultaneously sought a defense continuance until January 23, 2006. Narvin's entry of appearance was docketed on September 15, 2005, though the continuance was not recorded. While we share Appellant's concerns about the absence of a clear record of the continuances filed in this matter, all the evidence suggests that the continuance in question was filed by the de-

fense. There is absolutely no evidence that the Commonwealth sought a continuance on that date. Nonetheless, considering Appellant's burden on appeal, Attorney Narvin's statements at the 2006 Rule 600 hearing, his statements in the 2012 letter to the trial court, and in the absence of any evidence to the contrary, we conclude that a defense postponement was filed on September 14, 2005, rescheduling the trial date to January 23, 2006. In any event, even if we were to conclude that the evidence did not establish that the defense filed the postponement, we would alternatively conclude that the delay from September 14, 2005 until January 23, 2006 was excludable judicial delay, and in no way attributable to the Commonwealth.

*monwealth v. Hailey,* 470 Pa. 488, 368 A.2d 1261, 1264 (1977).

■ The standard we apply in determining if an Appellant's constitutional right to a speedy trial has been violated is the balancing test first articulated in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Under the *Barker* standard, we first examine the threshold question of whether "the delay itself is sufficient to trigger further inquiry." *Commonwealth v. Glover,* 500 Pa. 524, 458 A.2d 935, 937 (1983) (applying *Barker* ). If the delay is sufficient to trigger further inquiry, we then "balance the length of the delay with the reason for the delay, the defendant's timely assertion of his right to a speedy trial, and any resulting prejudice to the interests protected by the right to a speedy trial." *Id.*

The five-year delay that occurred in this case is certainly sufficient to trigger further inquiry under the first prong of the *Barker* test. *See Commonwealth v. Pounds,* 490 Pa. 621, 417 A.2d 597, 600 (1980) (a delay of almost two years precipitated further inquiry). We also conclude that Appellant's assertion of his right to a speedy trial was made in a timely fashion, having been asserted by Appellant multiple times during the course of the pre-trial delay. We thus focus on the remaining factors: the length of the delay, the reason for the delay, and the extent to which Appellant was prejudiced by the delay.

■ The length of the delay itself is not wholly distinct to the prejudice endured by Appellant. There can be little doubt that a delay of five years in bringing a defendant to trial for criminal charges can be prejudicial—memories fade, witnesses become unavailable, pre-trial incarceration becomes increasingly oppressive. *See generally Barker,* 407 U.S. at 532, 92 S.Ct. 2182. Accordingly, we conclude that a pre-trial delay of five years is long enough

to presume prejudice. However, the degree of actual prejudice that occurred, rather than the assumptions provided by our conclusion of presumptive prejudice, must be weighed against the reason for the delay in order to determine if Appellant's speedy trial rights have been violated.

The lion's share of delay in this case stemmed from two primary sources: Appellant's repeated discharge of appointed counsel, and the repeated attempts by the defense and the trial court to evaluate Appellant's competency to stand trial. Appellant was appointed no less than seven different attorneys during the course of his pre-trial delay. TCO, at 3. That does not include trial counsel, as Appellant ultimately represented himself, *pro se,* during his jury trial. *Id.* at 4. Two attorneys withdrew from representing Appellant under circumstances that were not remotely attributable to Appellant's own actions. As noted above, Attorney Mariani was forced to withdraw from representing Appellant due to the imposition of a new rule by our Supreme Court in September of 2005. A second attorney withdrew his appearance when he took a job working for the Commonwealth. Four attorneys withdrew their appearances citing irreconcilable differences with Appellant. Two of those attorneys withdrew after Appellant filed suit against them.

When new defense counsel is appointed by a trial court, it is imperative that the court permit new counsel time to communicate with his or her client, collect and study the evidence compiled by the Commonwealth, formulate a trial strategy, interview witnesses, investigate and collect defense evidence, and prepare and submit motions in accordance with the trial strategy. It is not surprising, then, that when a trial court accommodates the needs of new counsel to perform these duties, *in order*

*to effectuate the defendant's interests,* pre-trial delay is inevitable.

The second significant cause of pre-trial strategy in this case stems from "repeated and unceasing efforts by [defense] counsel to determine whether [A]ppellant was competent to stand trial." TCO, at 21. Indeed, every attorney appointed to represent Appellant ultimately sought to have Appellant's competency to stand trial evaluated, and the trial court did not hinder those efforts. The following timeline of events concerns the numerous motions, hearings, and commitments pertaining to Appellant's mental health and competency to stand trial that occurred during the protracted procedural history of this case.[3]

On June 8, 2005, Attorney Mariani filed a defense postponement "to get [defendant] evaluated for possible (probable) mental problems." Motion for Postponement, 6/8/05. On January 25, 2006, Attorney Narvin filed a defense postponement after the trial court granted his motion seeking another psychiatric evaluation of Appellant. Motion for Postponement, 1/25/06. A competency hearing was held on June 22, 2006, but Appellant had not yet been evaluated. Thus, on September 5, 2006, in compliance with the trial court's July 11, 2006, and August 29, 2006 orders, Appellant was transferred to Mayview State Hospital (Mayview) for evaluation. He remained at Mayview until December 13, 2006.

Appellant's subsequent attorney, Herbert Terrell, was appointed on February 7, 2007. On May 8, 2007, Appellant was transported to Waymart State Correctional Facility for a mental health evaluation and treatment. On August 23, 2007, the Department of Corrections General Counsel informed the trial court that it could not conduct the evaluation. On August 24,

2007, Attorney Terrell filed to postpone the case until December 13, 2007, seeking more time to complete Appellant's competency evaluations. Motion for Postponement, 8/24/07 [trial scheduled 12/13/07]. On September 24, 2007, the trial court again ordered Appellant transferred to Mayview, and two days later issued a separate order allowing Bruce Wright, M.D., to evaluate Appellant at Mayview. On July 1, 2008, Attorney Terrell filed another motion for postponement because Appellant was "in need of further psychiatric treatment and evaluation[,]" and because the Commonwealth's expert psychiatrist was unavailable for a hearing on that date. Motion for Postponement, 7/1/08. Soon thereafter, on July 31, 2008, Attorney Terrell was granted leave to withdraw.

Attorney James Walsh was then appointed to represent Appellant on August 18, 2008. On August 25, 2008, Attorney Walsh filed a motion for postponement because the defense expert was on vacation. Motion for Postponement, 8/25/08. On September 11, 2008, a competency hearing was held and the trial court declared Appellant incompetent to stand trial. On September 25, 2008, Attorney Walsh filed a motion to designate the case as complex and to seek more time, citing, in part, counsel's need to review voluminous psychiatric records pertaining to Appellant. Motion to Declare Criminal Homicide [sic] Appeal [sic] Case Complex, 9/25/08, ¶ 1(a-b).

On January 5, 2009, the trial court received a Behavior Clinic report regarding Appellant's competency and, on January 8, 2009, the trial court granted the Commonwealth's motion for postponement, which was sought so that the Commonwealth would have an opportunity to have its own

---

**3.** It should be noted that Appellant had fifteen other, unrelated cases before the trial court during the following course of events in addition to the instant matter.

psychiatric expert evaluate Appellant. After being sued by Appellant in Federal District Court, Attorney Walsh was permitted to withdraw on January 30, 2009.

Attorney Chris Eyster was appointed to represent Appellant on February 2, 2009, and filed motions for postponement in both March and April of 2009. In the April motion, Attorney Eyster cited the need for additional time to file defense motions. Motion for Postponement, 4/22/09. Both motions seemed to indicate that plea negotiations were ongoing and, on September 8, 2009, the case was continued to allow Appellant to consider a plea on this case as well as his other fifteen cases before the trial court. Ultimately, an agreement was reached that Appellant would proceed to trial on the instant case, and he would enter a plea of guilty but mentally ill in the other fifteen cases. A jury trial was held in the instant matter from September 14, 2009, to September 18, 2009.

Thus, Appellant's numerous counseled postponement requests were premised upon the notion that Appellant was not competent to stand trial, or that his mental health was relevant to formulating a defense to the myriad of charges leveled against him. The delays were, therefore, incurred for Appellant's benefit. Despite the five year pre-trial delay in this case, there appears to be only a single motion for postponement filed by the Commonwealth, and that postponement was directly related to the issue of Appellant's mental health and competency to stand trial.

■ "The law is clear that the Commonwealth is constitutionally barred from trying a defendant who is incompetent." *Commonwealth v. Fisher*, 334 Pa.Super. 449, 483 A.2d 537, 539 (1984). Accordingly, for purposes of Pa.R.Crim.P. Rule 1100 (now Rule 600), the statutory mechanism for enforcing a defendant's speedy trial rights, this Court has held that a criminal

defendant is unavailable for trial "from the time he requests a continuance for evaluation of his competency until he is adjudged competent to stand trial." *Id.* This is no less true when applying the constitutional standard.

Appellant's endless cycling through court-appointed attorneys and his numerous attempts to seek mental health and competency evaluations are the primary causes of delay in this case. And, as noted both by the Commonwealth and the trial court, even while represented, Appellant filed numerous *pro se* motions with the trial court, clogging the machinery of justice despite having no right to hybrid representation. *Commonwealth v. Ellis*, 534 Pa. 176, 626 A.2d 1137, 1139 (1993) (affirming that "there is no constitutional right to hybrid representation either at trial or on appeal."). Thus, because Appellant was the primary cause of delay, and because the delay was most often incurred for his benefit and the protection of his rights and effectively rendered him unavailable for trial, we reject that Appellant was unduly prejudiced simply by the length of the delay that occurred in this case.

■ Still, Appellant asserts a more specific claim of prejudice. He claims that one consequence of the extraordinary delay in this case was that he was prejudiced by the death of an alibi witness. However, Appellant alleges that his alibi witness died in May of 2005, eight months after the filing of the criminal complaint, and only four months after the filing of the criminal information. Appellant's trial commenced more than four years later. Thus, as the Commonwealth correctly points out, "it cannot be said that this witness was 'lost' as a result of a delay in bringing the case to trial." Commonwealth's Brief, at 22. Moreover, the failure to memorialize such testimony can in no way be attributable to the Common-

wealth or the trial court, but instead rests squarely upon the shoulders of Appellant and his trial counsel.

■ We conclude, therefore, that Appellant's speedy trial rights were not violated in this instance. Though the length of delay was extraordinary, it was principally due to defense efforts to challenge Appellant's competency to stand trial, and also because Appellant was unable or unwilling to work with the seven different attorneys appointed to represent him during the course of the pre-trial delay. These reasons originated with the defense and not with the Commonwealth or the trial court. Accordingly, we find no violation of Appellant's speedy trial rights under the Sixth Amendment to the United States Constitution and/or Article I, Section 9 of the Pennsylvania Constitution.

### Jury Reinstruction

Appellant next claims that the trial court deprived him of due process of law when it issued a jury reinstruction on robbery after the jury had only requested a charge on aggravated assault. The issue complained of arose when the jury asked the following question during their deliberations: "Can we have the instructions as to aggravated assault read to us and explained to us again? Does it pertain exclusively to Gregory Rupp or does it pertain to the other witnesses?" N.T. Trial, 9/15/09–9/18/09, at 252.

The trial court then instructed the jury as follows:

> In reviewing the indictment in this matter the Commonwealth charged aggravated assault with respect to Mr. Rupp only so you are not to consider the question of whether or not any other individuals were subject to that particular crime.
>
> When we talk about aggravated assault, we're talking about causing serious bodi-

ly injury which means the impairment of any physical condition which creates a substantial risk of death or causes serious permanent disfigurement or the protracted loss or use of a bodily organ. With this particular charge, the bodily injury or the serious bodily injury doesn't have to be caused.

What we're talking about here is an attempt to cause serious bodily injury. You put somebody in a position where it is likely that that individual would suffer serious bodily injury. So in order for you to find the defendant guilty of aggravated assault you have to be convinced beyond a reasonable doubt, first, that the defendant attempted to cause serious bodily injury to Mr. Rupp. Serious bodily injury, I told you, is that type of injury which would create a substantial risk of death or serious permanent disfigurement or the protracted loss of any bodily member or organ. If you find that the defendant attempted to do this, you must find that he engaged in a substantial step that would have caused that serious bodily injury and, second, that his conduct in this regard was intentional, that he intended to do that. It is not that it was [a side] matter but he acted in such a manner and displayed such conduct that it was obvious that it was his intent to cause serious bodily injury to the particular victim. In this case it was Mr. Rupp.

Now, if you would find that the defendant visibly possessed a firearm during the course of the commission of a robbery, you may find that that constitutes a threat of deadly injury for the purpose of intentionally putting the victim in fear of serious bodily injury. If you feel that he visibly possessed a firearm and showed that firearm to the victim, you can use that as circumstantial evidence

for finding that he put the victim in fear of serious bodily injury.

With that, we'll let you go back and resume your deliberations.

*Id.* at 252—54.

Appellant objected and complained that the jury had only requested reinstruction on the charge of aggravated assault. The jury had not requested reinstruction on robbery, nor on the related/subsidiary issue of whether Appellant visibly possessed a firearm, which would fulfill the robbery element of putting the victim in fear of serious bodily injury.

Although he was a witness to the robbery of McDonald's, Rupp was not alleged to have been a victim of robbery. Rupp pursued Appellant in a vehicle chase that occurred immediately after the robbery. At one point, Appellant put his vehicle in reverse, backing into the pursuing vehicle driven by Rudd. The Commonwealth contended that the basis of the aggravated assault charge was that Appellant "rammed his car into Mr. Gregory Rupp risking him serious injury for the sake of his escape." *Id.* at 232.

Thus, Appellant contends, "the effect of this erroneous charge was to convey to the jury that [Appellant] was guilty of robbery." Appellant's Brief, at 18. Appellant explains:

Up to that point, the jury deliberations had been quite lengthy and the jury had already rejected the robbery charge. Then the Court highlighted the robbery instruction and thereby resurrected the charge. Subsequently, the jury rendered their verdict finding [Appellant] guilty of robbery and receiving stolen property, and not guilty of aggravated assault.

*Id.*

The Commonwealth concedes that the trial court's reinstruction exceeded the scope of the jury's request. However, the Commonwealth contends that the error was harmless, pointing out that Appellant was ultimately acquitted of aggravated assault. The Commonwealth further argues that Appellant's claim that the jury had already rejected the robbery charge at the time the jury was reinstructed was unfounded.

On the last point, we agree with the Commonwealth. We see no basis upon which to conclude that the jury had rejected the robbery charge prior to requesting additional instructions regarding the charge of aggravated assault. As the Commonwealth has conceded the error and instead argued that the error was harmless, we will only address the latter issue.

Appellant cites *Sullivan v. Louisiana,* 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), for the proposition that this Court is prohibited from engaging in harmless-error review. In *Sullivan,* the Supreme Court of the United States held that a constitutionally deficient reasonable-doubt instruction requires reversal of conviction. Explaining why harmless-error analysis was inappropriate in such circumstances, Justice Scalia wrote for the majority:

Insofar as the possibility of harmless-error review is concerned, the jury-instruction error in this case is quite different from the jury-instruction error of erecting a presumption regarding an element of the offense. A mandatory presumption—for example, the presumption that a person intends the ordinary consequences of his voluntary acts—violates the Fourteenth Amendment, because it may relieve the State of its burden of proving all elements of the offense. But "[w]hen a jury is instructed to presume malice from predicate facts, it still must find the existence of those facts beyond

a reasonable doubt." And when the latter facts "are so closely related to the ultimate fact to be presumed that no rational jury could find those facts without also finding that ultimate fact, making those findings is functionally equivalent to finding the element required to be presumed." A reviewing court may thus be able to conclude that the presumption played no significant role in the finding of guilt beyond a reasonable doubt. But the essential connection to a "beyond a reasonable doubt" factual finding cannot be made where the instructional error consists of a misdescription of the burden of proof, which vitiates all the jury's findings. A reviewing court can only engage in pure speculation—its view of what a reasonable jury would have done. And when it does that, "the wrong entity judge[s] the defendant guilty."

*Id.* at 280–81, 113 S.Ct. 2078 (internal citations omitted).

Appellant does not contend that reinstruction given by the trial court misdescribed the burden of proof in this case, as was the primary concern in *Sullivan*. In fact, Appellant does not argue that the content of the trial court's reinstruction was legally deficient at all. Indeed, Appellant fails to provide any argument supporting the applicability of *Sullivan*. Because Appellant's claim of error regarding the jury reinstruction at issue in this case does not involve the burden of proof, we decline to apply *Sullivan*.

Our standard of review of claims of error in jury instructions is as follows:

When reviewing a challenge to jury instructions, the reviewing court must consider the charge as a whole to determine if the charge was inadequate, erroneous, or prejudicial. The trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. *A new trial is required on account of an erroneous jury instruction only if the instruction under review contained fundamental error, misled, or confused the jury.*

*Commonwealth v. Fletcher,* 604 Pa. 493, 986 A.2d 759, 792 (2009) (internal citations and quotation marks omitted).

Appellant fails to argue how the instruction at issue constituted fundamental error. The instruction was not altered from the original instructions,[4] it was legally correct, and it was appropriate considering the evidence proffered at trial. Presumably Appellant is arguing that the instruction misled or confused the jury because it had not been requested, as the jury had only inquired about the offense of aggravated assault. We disagree.

The record is quite clear that the trial court simply reread the original instructions concerning aggravated assault, which were immediately followed by instructions concerning the presumption regarding a visibly possessed firearm. The instructions were paired together because both instructed the jury regarding common elements of both aggravated assault and robbery that concerned putting victims in fear of serious bodily injury. Because both instructions were indisputably accurate statements of the law, Appellant must offer more than mere speculation concerning the disposition of the jury in claiming that the surplus instruction misled or confused

---

4. The trial court explained why the robbery-related instruction was given in conjunction with the aggravated assault instruction: "This Court merely repeated the instruction that it had given in its original charge to which no objection was made and it did not recharge on the crime of robbery." TCO, at 29.

the jury. There is no evidence of record that suggests that the superfluous instruction altered or unduly influenced the judgment of the jury. Accordingly, we conclude that the error was harmless.

## Erroneous Reasonable Doubt Jury Charge

■ Appellant next contends that that the trial court deprived him of due process of law by instructing the jury on reasonable doubt by use of an improper or inaccurate analogy. Here, since Appellant claims that the trial court distorted the burden of proof, the *Sullivan* standard is appropriate; if the trial court erred in defining reasonable doubt, the error cannot be harmless. However, regardless of the suitability of the analogy used by the trial court, Appellant's claim must fail because it was not adequately preserved.

The rules of criminal procedure provide with regard to a jury charge that "[n]o portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate." Pa. R.Crim.P. 647(B). As such, "[a] defendant must object to a jury charge at trial, lest his challenge to the charge be precluded on appeal." *Commonwealth v. Corley*, 432 Pa.Super. 371, 638 A.2d 985, 990 (1994). This is true "[e]ven where the alleged error is 'basic and fundamental,' ... [as] any challenge to instruction must be initiated in the trial court." *Id.* (quoting *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974)).

Appellant did not object to the trial court's analogy during or immediately after the charge was read to the jury. Notwithstanding our concerns regarding the aptness of the analogy given by the trial court in describing the reasonable doubt standard, Appellant failed to object at the appropriate time so as to afford the trial

court the opportunity to correct any error or misrepresentation that the analogy generated. Accordingly, we conclude that Appellant waived this particular claim.

## Double Jeopardy

Appellant's next claim is that his prosecution was barred by the Double Jeopardy Clause of the United States Constitution and 18 Pa.C.S. § 110. He asserts that the crimes prosecuted in Allegheny County arose out of the same criminal episode as crimes for which he had been previously convicted in Westmoreland County. Therefore, Appellant claims the trial court erred when it failed to grant his motion to dismiss on double jeopardy grounds.

■ On April 25, 2005, Appellant pleaded guilty to theft by unlawful taking, 18 Pa.C.S. § 3921(a) (movable property), in Westmoreland County, for the theft that occurred on July 31, 2004. The instant case stems from the events of August 1, 2004. Appellant contends that though these criminal acts occurred on separate days, they were part of the same criminal episode and, therefore, the subsequent prosecution in Allegheny County was barred by Double Jeopardy and 18 Pa.C.S. § 110.

The double jeopardy protections afforded by the United States and Pennsylvania Constitutions are coextensive and prohibit successive prosecutions and multiple punishments for the same offense. *See Commonwealth v. Cosnek*, 575 Pa. 411, 414 n. 2, 836 A.2d 871, 873 n. 2 (2003); *Commonwealth v. Buffington*, 574 Pa. 29, 39, 828 A.2d 1024, 1029 (2003). The prohibition against double jeopardy protects against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense. *See Commonwealth v. McCane*, 517 Pa.

489, 499, 539 A.2d 340, 345 (1988) (citing *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)). More specifically, the constitutional right against double jeopardy protects against being sentenced for both a greater and a lesser-included offense, as such a result would punish a defendant twice for the same conduct. *See Buffington*, [574 Pa.] at 38–41, 828 A.2d at 1029–31. The constitutional prohibition of double jeopardy also protects the convicted defendant from multiple prosecutions for the same offense, requiring a "single criminal episode" analysis. *See Commonwealth v. Tarver*, 493 Pa. 320, 426 A.2d 569, 571–72 (1981); *see also Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977).

*Commonwealth v. States*, 891 A.2d 737, 741–42 (Pa.Super.2005).

Section 110 of the Pennsylvania Rules of Criminal Procedure governs when a prosecution is barred by a former prosecution for a different offense, and thus serves as a statutory enforcement mechanism for protecting a defendant's Double Jeopardy rights in Pennsylvania's criminal courts. In *Commonwealth v. Pries*, 861 A.2d 951 (Pa.Super.2004), we held that:

> the compulsory joinder rule, set forth at [18 Pa.C.S. § 110], bars a subsequent prosecution if all prongs of the following test are met:
>
>> (1) the former prosecution resulted in an acquittal or conviction; (2) the current prosecution was based on the same criminal conduct or arose from the same criminal episode; (3) the prosecutor in the subsequent trial was aware of the charges before the first trial; and (4) all charges were within the same judicial district as the former prosecution.

*Pries*, 861 A.2d at 954 (quoting *Commonwealth v. Nolan*, 579 Pa. 300, 855 A.2d 834, 839 (2004)) (footnote omitted).

 For the purposes of this case, the statute is coextensive with the constitutional standard. The relevant question under either line of inquiry is whether the theft that occurred on July 31, 2004, giving rise to Appellant's theft conviction in Westmoreland County, was part of the same 'criminal episode' as the robbery that occurred on August 1, 2004, that gave rise to Appellant's convictions in this case.

> The determination of what constitutes a single criminal episode must not be approached in a rigid or hypertechnical manner that would defeat the purposes underlying Section 110. Rather, when determining what constitutes a single criminal episode, we consider (1) the temporal relationship between the acts in question and (2) the logical relationship between the acts. In determining whether a number of offenses are "logically related" to one another, a court should inquire into whether there is a substantial duplication of factual and/or legal issues presented by the offenses; if there is substantial duplication, then the offenses are logically related and must be prosecuted at one trial.

*Commonwealth v. Wittenburg*, 710 A.2d 69, 73 (Pa.Super.1998) (internal citations omitted).

The trial court concluded that the incidents were not part of the same criminal episode:

> [I]n examining Miskovitch's claim that his prosecution should have been barred on the grounds of double jeopardy, it is clear that the theft in Westmoreland County which occurred on July 31, 2004[,] was not part of the same criminal episode as the robbery and aggravated assault that occurred on August 1, 2004, or any of the other crimes that Misko-

vitch committed during the month of August, 2004 in Allegheny County. There is no substantial duplication of legal or factual issues in this case since there would be numerous different witnesses associated with each of his cases and, in particular, with the two cases arising out of his criminal activity of July 31, 2004 and August 1, 2004. There were different police departments, there were different victims and different burdens of proof since even the crimes were dissimilar. The only linking factor between these crimes was that the car that Miskovitch stole on July 31, 2004 was used in the robbery that he committed on August 1, 2004. Since it is readily apparent that these crimes could not constitute a single criminal episode, it is clear that this Court properly denied Miskovitch's motion to bar his prosecution on the basis of double jeopardy.

TCO, at 25.

■ We generally agree with the trial court's analysis. Apart from Appellant's role in these crimes, the vehicle stolen on July 31, 2004, provided the only link to the instant case; however, even that link is dubious.[5] The crimes occurred on different days and at different locations, and, not surprisingly, different witnesses were required for the prosecution of the separate crimes. There were no common elements of the charged criminal offenses beyond the identity of the perpetrator, nor did the separate prosecutions result in duplication of any other legal or factual issues. As such, there was no logical relationship between the crimes and, there-

fore, the trial court did not err when it failed to grant Appellant's motion to dismiss on double jeopardy grounds or pursuant to 18 Pa.C.S. § 110.

## Venue

Appellant also contends, however, that venue was improper because he was tried in Allegheny County for offenses committed in Westmoreland County. We also find this claim to lack merit.

Venue is criminal cases is governed by Pa.R.Crim.P. 130, which reads, in pertinent part, as follows:

(A) **Venue.** All criminal proceedings in summary and court cases shall be brought before the issuing authority for the magisterial district in which the offense is alleged to have occurred or before an issuing authority on temporary assignment to serve such magisterial district, subject, however, to the following exceptions:

. . .

(3) When charges arising from the same criminal episode occur in more than one judicial district, the criminal proceeding on all the charges may be brought before one issuing authority in a magisterial district within any of the judicial districts in which the charges arising from the same criminal episode occurred.

. . .

(B) **Transfer of Proceedings in Court Cases.**

(1) Prior to the completion of the preliminary hearing:

---

**5.** Indeed, the trial court overstates the strength of Appellant's claim, contrary to the facts adduced at trial. The Commonwealth states that the vehicle used by Appellant before and after the robbery on August 1, 2004, was not the same vehicle he stole on July 31, 2004. Our review of the trial transcript con-

firms that the vehicle found abandoned in Allegheny County on August 1, 2004 had been stolen the same day from Monroeville Mall, also in Allegheny County. *See* N.T. Trial, 162—65; 174. Therefore, it was not the vehicle Appellant stole from Westmoreland County on July 31, 2004.

(a) When charges arising from a single criminal episode, which occurred in more than one judicial district,

(i) are filed in more than one judicial district, upon the filing with the issuing authority of a written agreement by the attorneys for the Commonwealth, the proceedings shall be transferred to the magisterial district in the judicial district selected by the attorneys for the Commonwealth; or

(ii) are filed in one judicial district, upon the filing of a written agreement by the attorneys for the Commonwealth, the proceedings shall be transferred to the magisterial district in the judicial district selected by the attorneys for the Commonwealth.

Pa.R.Crim.P. 130.

 Venue is predominately a procedural matter that "relates to the right of a party to have the controversy brought and heard in a particular judicial district." *Commonwealth v. Bethea,* 574 Pa. 100, 828 A.2d 1066, 1074 (2003). Venue is "generally prescribed by rules of this Court" and "assumes the existence of jurisdiction." *Id.*

Subject matter jurisdiction and venue are distinct. However, since jurisdiction references the power of a court to entertain and adjudicate a matter while venue pertains to the locality most convenient to the proper disposition of a matter, venue can only be proper where jurisdiction already exists. The terms are often used interchangeably because they must exist simultaneously in order for a court to properly exercise its power to resolve a particular controversy.

*Id.* at 1074–75 (internal citations omitted).

 "[A]ll courts of common pleas have statewide subject matter jurisdiction in cases arising under the Crimes Code." *Id.* at 1074. Thus, Appellant's claim only challenges the procedural aspect of venue, as it is clear that Allegheny County would have subject matter jurisdiction even over violations of the Crimes Code committed exclusively and/or entirely within Westmoreland County. *See id.*

Criminal charges in this case were originally filed in Westmoreland County. Subsequently, the District Attorneys of Westmoreland and Allegheny County entered into an agreement, pursuant to Pa. R.Crim.P. 130(B)(1)(a)(i), to try Appellant for the offenses charged in this case in Allegheny County. Also part of the transfer were 15 other criminal cases, some of which arose out of criminal conduct that occurred several weeks before the robbery of the Westmoreland County McDonald's.

While this case certainly had more contacts with Westmoreland than with Allegheny County, there was arguably a nexus with the latter county sufficient to satisfy the language of Rule 130 that the criminal episode at issue in the instant case "occurred in more than one judicial district." Pa.R.Crim.P. 130(B)(1)(a). Appellant's assertion that the crimes of August 1, 2004, occurred entirely within Westmoreland County is an overstatement. The vehicle Appellant used to travel to Westmoreland County to rob the McDonald's was stolen in Allegheny County, *see* footnote 6, *supra,* and the same car was ultimately abandoned by Appellant in Allegheny County only one-half hour after the robbery. Still, there may be doubt whether the vehicle theft in Allegheny County and its subsequently abandonment after the robbery constituted facts or raised issues *essential* to the crimes charged in this case.

In support of his claim that venue was improper, Appellant cites only *Commonwealth v. Dixon,* 603 Pa. 519, 985 A.2d 720 (2009). In *Dixon,* our Supreme Court deliberated on the proper venue for a criminal action arising out of a defendant's fail-

ure to pay personal income taxes. Two venues were considered: first, the venue where the obligation arose (the venue in which the accused lived and worked, Berks County); and second, the venue where the payment was due (the location of the Department of Revenue's office, Dauphin County). The Supreme Court concluded that the proper venue was Berks County, the venue in which the obligation to pay income taxes arose, reaffirming a similar decision made two decades prior, in *Commonwealth v. Boyle*, 516 Pa. 105, 532 A.2d 306 (1987).[6]

We find both *Dixon* and *Boyle* unhelpful in the resolution of the issue at stake in this case, as both involved unique concerns associated with determining the location of an act of omission and issues arising out the statutory framework of the Tax Code. *See Boyle*, 532 A.2d at 310 ("A determination of the locus of a crime becomes more difficult when the crime consists of a failure to act."); *see also Dixon*, 985 A.2d at 726 ("Regardless of how many counties have proper venue, a defendant may be tried only once, in one venue, for any single crime. The bright-line rule seems efficient, but when applied to the realities of tax payment in the Commonwealth, the approach is flawed.").

Because Appellant's venue claim is exclusively procedural in nature, we look to Pa.R.Crim.P. 109 for guidance. Rule 109 provides that:

A defendant shall not be discharged nor shall a case be dismissed because of a defect in the form or content of a complaint, citation, summons, or warrant, or a defect in the procedures of these rules, unless the defendant raises the defect before the conclusion of the trial in a summary case or before the conclusion of the preliminary hearing in a court case, *and the defect is prejudicial to the rights of the defendant.*

Pa.R.Crim.P. 109 (emphasis added).

■ Thus, even assuming that venue was improper, Appellant must demonstrate prejudice in order to be entitled to relief, at least where, as was true in this case, the choice of venue is purely procedural, and not jurisdictional in nature. Indeed, the purpose of venue, apart from the manner in which it relates to subject matter jurisdiction, is a matter of convenience to the litigants. *See Bethea*, 828 A.2d at 1074–75 ("[V]enue pertains to the locality most convenient to the proper disposition of a matter[.]").

■ Appellant has not offered any argument regarding how he had been prejudiced by having this case tried in Allegheny County rather than Westmoreland County. The counties are located adjacent to each other and, thus, the burdens associated with traveling to the other venue are minimal (the respective courthouses are only 34 miles apart). Appellant was the only witness called by the defense and,

6. In *Dixon,* the Supreme Court reasoned as follows:

When the *Boyle* holding is applied to the facts of the instant case, it is clear that venue is proper in Berks County. [The][a]ppellant is a resident of Berks County. [He] lived and worked in Berks County. All of [his] actions that obligated him to pay personal income taxes occurred in Berks County. If the Commonwealth cannot establish that [the][a]ppellant earned income, then the Commonwealth may not successfully demonstrate that [he] was obligated to file a tax return or pay taxes. Pursuant to this Court's holding in *Boyle*, any violation of the Code occurred in Berks County where [the][a]ppellant earned income, obligated himself to pay taxes, and then failed to remit those taxes. The Commonwealth is not entitled to try [the][a]ppellant, or any other taxpayer, in Dauphin County simply because the Department is located there.

*Dixon*, 985 A.2d at 724.

because all of the other witnesses involved in this case that might have been required to travel from Westmoreland to Allegheny County were Commonwealth's witnesses, it would appear the Commonwealth, and not Appellant, would endure most of the burden by trying the case in Allegheny County. Because Appellant has not offered any reasons why he was prejudiced by the transfer of venue to Allegheny County, we find his final claim warrants no relief.

Judgment of sentence affirmed.