J-S38028-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RICHARD BRUCE DINCH, SR. | : | |
| | : | |
| Appellant | : | No. 1871 WDA 2017 |

Appeal from the Judgment of Sentence December 8, 2017
In the Court of Common Pleas of McKean County Criminal Division at
No(s): CP-42-CR-0000484-2016

BEFORE: BOWES, J., NICHOLS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY NICHOLS, J.:                            FILED JULY 18, 2018

Appellant Richard Bruce Dinch, Sr., appeals from the judgment of sentence entered following his jury trial conviction of theft by unlawful taking or disposition.[1]  Appellant asserts that the trial court abused its discretion in denying his motion to dismiss pursuant to Pa.R.Crim.P. 600 and that the evidence was insufficient to prove that Appellant had the requisite intent to deprive Victor Matzner (Victim) of $2,500.  We affirm.

The trial court summarized the relevant facts of this matter as follows:

[Victim] testified that he and [Appellant] met at his home [in September 2014] to discuss the installation of a roof.  [Appellant] initially requested $8,000 for the job and [Victim] indicated "that was too much."  The two then agreed on $5,000[,] with [half] paid before and [half] paid after the job was completed.  [Victim] sent

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 3921(a).

a certified check to [Appellant] for $2,500. The parties agreed that [Appellant] would complete the work "as soon as possible." [Victim] lived in North Carolina and he left to return there. When he returned [to Pennsylvania] four months later[,] he discovered that the work had not been completed. He initially spoke with [Appellant] over the telephone but that "ceased." He tried to find [Appellant by] going to his relatives' homes but he could not locate him. The work was never completed. [After the police were contacted, Pennsylvania State] Trooper Robert Fay made numerous attempts to locate [Appellant] but was unable to make contact with him [until June of 2016].

Trial Ct. Op., 2/21/18, at 2 (unpaginated) (citations omitted).

On September 14, 2016, the Commonwealth filed a criminal complaint against Appellant. On October 22, 2016, Appellant was arrested and preliminarily arraigned regarding charges of theft by unlawful taking or disposition and theft by deception.[2] On October 27, 2016, Appellant waived a preliminary hearing, and all of his charges were held over for proceedings in the Court of Common Pleas. Appellant's "Last Day to Plea" was scheduled for December 22, 2016.

Appellant did not enter a plea on December 22, 2016, but requested that the matter be listed for trial. The trial court listed Appellant's matter as a "backup" trial for March 27, 2017, in the event that the primary trial listed that day could not go forward. The Commonwealth filed a "Motion to Continue Backup Trial" on February 24, 2017—thirty days prior to the listed trial date—on the basis that the Commonwealth's material witness could not appear for

_____

[2] 18 Pa.C.S. § 3922(a)(1).

court on one hour's notice because he lived in North Carolina. The motion to continue the backup trial was granted by an order entered March 17, 2017.

A notice indicating trial was scheduled in this matter was filed on May 17, 2017, designating this matter as the "primary" trial on July 24, 2017. On June 28, 2017—twenty-six days before the listed trial date—the Commonwealth filed a motion to continue the trial on the basis that the affiant in the matter was scheduled to be on a pre-paid, out-of-state vacation on the date of the trial. This motion was granted by an order entered June 29, 2017.

On September 7, 2017, this matter was scheduled as a "backup" trial for the second day of a three-day case being prosecuted by the Attorney General from September 25 through September 27, 2017. The Attorney General's case proceeded for all three scheduled days, and this matter could not proceed.

A notice indicating trial was scheduled in this matter was filed on October 20, 2017, designating this matter as the "primary" trial on November 21, 2017. On November 16, 2017, Appellant filed a motion to continue jury selection and trial, which was denied by the trial court.

On November 17, 2017, Appellant filed a motion to dismiss the matter pursuant to Pa.R.Crim.P. 600. On November 20, 2017, the Commonwealth filed a motion to amend the information to add a count regarding home improvement fraud. A hearing on the motion to continue jury selection and trial, the Rule 600 motion, and the motion to amend was held on November 20, 2017. The court denied all three motions that same day.

We summarize the testimony at the Rule 600 motion hearing below. Following the hearing, the trial court determined that the period of time after the filing of the complaint until Appellant was arrested did not count against the Commonwealth, and that the running of time for purposes of Rule 600 began on October 22, 2016. N.T., 11/20/17, at 57, 60. The trial court also excluded the time periods when the Commonwealth received its continuances. Id. at 58.

The matter proceeded to a jury trial on November 21, 2017. Following the close of the Commonwealth's case-in-chief, Appellant made an oral motion for judgment of acquittal on both charges on the basis of insufficient evidence, asserting that the evidence failed to demonstrate that Appellant had the intent to permanently deprive Victim of $2,500. See N.T., 11/21/17, at 29. Following argument on the motion, the trial court denied the motion. Id. at 40. Appellant testified in his defense that he did not return the $2,500 to Victim and that he had spent the money. Id. at 51.

The jury returned a verdict of guilty of theft by unlawful taking or disposition and not guilty of theft by deception. Sentencing took place on December 8, 2017. At the sentencing hearing, Appellant raised an oral motion for extraordinary relief pursuant to Pa.R.Crim.P. 704(B), requesting that the trial court set aside the verdict. The motion was denied and Appellant was sentenced to two to four years' incarceration.

Appellant filed a timely notice of appeal and timely court-ordered concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).[3] The trial court complied with Pa.R.A.P. 1925(a).

Appellant raises the following questions:

1. Whether the trial court abused its discretion in denying [Appellant's] motion to dismiss pursuant to Pa.R.Crim.P. 600?

2. Whether the evidence was insufficient to sustain a finding of [theft by unlawful taking or disposition], where the Commonwealth's evidence was insufficient to prove beyond a reasonable doubt that [Appellant] had the intent to permanently deprive Victor Matzner of $2[,]500.

Appellant's Brief at 7.

Before summarizing Appellant's argument in support of his first issue, we state the following as background. At the Rule 600 hearing, the District Attorney's office manager, Julie Comes, was asked to justify the span of time in between the filing of the complaint and the arrest of Appellant. Comes testified she was "not sure" if the delay was because the police could not find Appellant, stating that she was "assuming that's why." See N.T., 11/20/17, at 40.

_____

[3] We note that Appellant raised a sufficiency challenge in his Rule 1925(b) statement, but he failed to specify which element of the crime of theft by unlawful taking or disposition he intended to challenge. Under some circumstances, this could result in waiver of the claim. See, e.g., Commonwealth v. Garland, 63 A.3d 339, 344 (Pa. Super. 2013). However, because the trial court "readily apprehended Appellant's claim and addressed it" we review this challenge to the sufficiency of the evidence. Commonwealth v. Laboy, 936 A.2d 1058, 1059 (Pa. 2007).

Comes also testified about various trial dates. She initially acknowledged that pursuant to local rules, she was required to provide defense counsel with thirty days' notice when scheduling a trial. See id. at 9. Comes then discussed various criminal jury trial dates during 2017, whether they were used, and which defendants were prosecuted on each date. See id. at 10-39.

In pertinent part, during the period between the initial scheduled trial date of March 27, 2017, and the next scheduled trial date of July 24, 2017, two dates that had been set aside for trials, March 29, 2017, and June 27, 2017, went unused. Id. at 25, 34-35. Specifically, Comes testified that the date of March 29, 2017, went unused because both the "primary" trial and two "backup" trials did not proceed on that date. Id. at 34-35. She similarly explained that the trial date of June 27, 2017, went unused because that particular defendant entered a plea four days beforehand. Id. at 25.

During the period between the second scheduled trial date of July 24, 2017, and the next scheduled trial date of September 26, 2017, Comes stated that only July 31, 2017, went unused as a trial date. Id. at 23. This date went unused because the defendant had continued the trial three days prior to trial. Id.

With that background in mind, we summarize Appellant's arguments in support of his initial issue. First, Appellant asserts that the trial court improperly concluded that certain portions of time were properly excludable under Rule 600. Appellant argues that the period of time from the filing of his

complaint to the date he was arrested was not excludable because Ms. Comes testified that she was not sure why Appellant was not arrested sooner and "the record is devoid of any testimony from the Pennsylvania State Police Trooper to explain the circumstances of the arrest." Appellant's Brief at 18. Thus, according to Appellant, the Commonwealth failed to carry its burden of proof regarding due diligence in attempting to arrest Appellant.

Second, Appellant asserts that the Commonwealth failed to exercise due diligence because it could have requested continuances earlier in the course of the proceedings, which would have minimized any delay by the Commonwealth in rescheduling trial.[4] Id. at 20-21. Appellant argues that the Commonwealth could have acted more quickly to schedule trials once the continuances were granted. Id. at 21. Appellant additionally asserts that based upon Ms. Comes' testimony, thirteen jury trial dates during 2017 went unused up until the date his trial took place. Id. at 23.

We review Rule 600 rulings for an abuse of discretion. Commonwealth v. Mills, 162 A.3d 323, 325 (Pa. 2017).

> The proper scope of review is limited to the evidence on the record of the Rule [600] evidentiary hearing, and the findings of the [trial] court. An appellate court must view the facts in the light most favorable to the prevailing party.

_____

[4] According to Appellant, per "an Administrative Order of the Court of Common Pleas of McKean County, Pennsylvania, dated December 28, 1999, the District Attorney of McKean County is given nearly exclusive control over what cases are scheduled for the available trial dates in a given year . . . ." Appellant's Brief at 20-21.

Commonwealth v. Plowden, 157 A.3d 933, 936 (Pa. Super.) (en banc) (citation omitted), appeal denied, 170 A.3d 1043 (Pa. 2017). When reviewing trial court rulings, this Court must consider Rule 600's dual purposes: the protection of the defendant's speedy trial rights and the protection of society. Id.

Rule 600 states in relevant part that "[t]rial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed." Pa.R.Crim.P. 600(A)(2)(a). In computing time, Rule 600 provides that "periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation." Pa.R.Crim.P. 600(C)(1). More specifically, "[e]xcludable time includes delay caused by the defendant or his lawyer. Concomitantly, excusable delay occurs where the delay is caused by circumstances beyond the Commonwealth's control and despite its due diligence." Commonwealth v. Roles, 116 A.3d 122, 125 (Pa. Super. 2015) (citations and internal quotation marks omitted). The Commonwealth bears the burden of proving by a preponderance of the evidence that it exercised due diligence. Plowden, 157 A.3d at 941.

"The starting point for calculating delay for Rule 600 purposes is the date of filing of the criminal complaint . . . ." Commonwealth v. Miskovitch, 64 A.3d 672, 678 (Pa. Super. 2013).

> [T]he courts of this Commonwealth employ three steps . . . in determining whether Rule 600 requires dismissal of charges against a defendant. First, Rule 600(A) provides the mechanical run date. Second, we determine whether any excludable time exists pursuant to Rule 600(C). We add the amount of excludable time, if any, to the mechanical run date to arrive at an adjusted run date.

Commonwealth v. Wendel, 165 A.3d 952, 956 (Pa. Super. 2017) (citation omitted).

The time between the filing of the complaint and the arrest of a defendant is excludable where "the defendant could not be apprehended because his or her whereabouts were unknown and could not be determined by due diligence." Pa.R.Crim.P. 600(C)(1). Additionally, when calculating time for purposes of Rule 600, a trial court may excuse time attributable to the unavailability of a witness because "[t]he Commonwealth cannot be held to be acting without due diligence when a witness becomes unavailable due to circumstances beyond its control." Wendel, 165 A.3d at 957 (citation omitted) (holding that a police officer's unavailability was a circumstance beyond the Commonwealth's control, and the Commonwealth was not acting without due diligence in postponing trial); see also Commonwealth v. Hunt, 858 A.2d 1234, 1243 (Pa. Super. 2004) (en banc) (finding that victim's unavailability due to absence from the country was a circumstance beyond the Commonwealth's control).

We first address whether the thirty-eight-day period between the filing of the complaint and the arrest was excludable time. The record does not address whether Appellant "could not be apprehended because his []

whereabouts were unknown and could not be determined by due diligence." Miskovitch, 64 A.3d at 678. As set forth above, the only testimony on this subject was Ms. Comes' testimony, in which she indicated that she "assumed" Appellant could not be found. N.T., 11/20/17, at 40. The Commonwealth has not identified any other testimony to demonstrate that it acted with due diligence during the period between the filing of the complaint and Appellant's arrest. Accordingly, we do not consider this time to be excludable. Therefore, the 365-day run date was one year from the date the complaint was filed, or September 14, 2017.

We next address whether the periods of time attributable to the Commonwealth's continuances were excusable. The first continuance was granted because Victim, a key witness, resided in North Carolina and was unavailable on short notice should this matter be called as a "backup" trial. See Hunt, 858 A.2d at 1243. The second Commonwealth continuance was granted because the affiant was unavailable due to a planned pre-paid vacation. See Wendel, 165 A.3d at 957. We discern no abuse of discretion by the trial court, and conclude that portions of time based on these continuances were properly excusable.[5] See Plowden, 157 A.3d at 936.

_____

[5] Neither the parties nor the court calculated the length of excusable time associated with the continuances. We note that the maximum period of time attributable to the first continuance was 119 days from March 27, 2017, through the second scheduled trial date of July 24, 2017 (first continuance period). The maximum period of time attributable to the second continuance was 64 days from July 24, 2017, through the third scheduled trial date of September 26, 2017 (second continuance period).

- 10 -

With respect to Appellant's second argument—that the Commonwealth failed to exercise due diligence—we similarly perceive no trial court error. Per Comes' testimony, all trial dates except three were used during those periods of time. See N.T., 11/20/17, at 10-39. With respect to those three remaining trial dates, one trial date initially had three other trials scheduled to take place that day and the remaining two trial dates involved a defendant either taking a plea or continuing the case immediately beforehand. See id. at 23, 25, 34-35.

The Commonwealth also provided ample time prior to the scheduled trial dates when it filed its continuances. In the first continuance, the Commonwealth filed its motion on February 24, 2017, which was thirty days before the trial scheduled for March 27, 2017. In the second continuance, the Commonwealth filed its motion on June 28, 2017, which was twenty-six days prior to the trial scheduled for July 24, 2017. Accordingly, we agree with the trial court that the timing of the filing of the Commonwealth's requests for continuances demonstrates due diligence. See Plowden, 157 A.3d at 941.

However, Appellant's assertion that the Commonwealth could have acted more quickly to schedule trials once the continuances were granted has merit. The record shows that following the date of the first scheduled trial of March 27, 2017, the Commonwealth did not schedule a new trial date until May 17, 2017. The record does not reveal a reason for this fifty-one-day delay in scheduling. See id. (stating that the Commonwealth bears the burden of proof that it exercised due diligence). Likewise, following the second

scheduled trial date of July 24, 2017, the Commonwealth did not schedule the third trial date until September 7, 2017, and the record does not indicate how the Commonwealth exercised due diligence during this forty-five day delay. See id. Accordingly, because the record does not substantiate the Commonwealth's position that it exercised due diligence in this regard, the trial court erred in finding otherwise.

Thus, from the first continuance period of 119 days, fifty-one days must be subtracted for lack of due diligence, resulting in an excusable delay of sixty-eight days. From the second continuance period of sixty-four days, forty-five days must be subtracted for lack of due diligence. Additionally, twelve days at the end of the second continuance period were after the run date of September 14, 2017, and must be subtracted. Thus, the second continuance period yielded seven days of excusable time. Together, the continuance periods resulted in seventy-five days of excusable time.

As noted above, the trial in this matter began on November 21, 2017, sixty-eight days after the run date of September 14, 2017. Therefore, because the continuance periods resulted in seventy-five days of excusable time, the Commonwealth ultimately did not violate Rule 600. See Wendel, 165 A.3d at 956 (noting that we add the amount of excludable time to the mechanical run date to arrive at an adjusted run date). We therefore affirm the trial court's denial of Appellant's Rule 600 motion, albeit on different grounds. See In re Jacobs, 15 A.3d 509 n.1 (Pa. Super. 2011).

In support of his next issue, Appellant asserts that the evidence was insufficient to convict him of theft by unlawful taking or disposition because the Commonwealth failed to prove Appellant had the intent to deprive Victim of $2,500 permanently. Appellant's Brief at 26. Appellant argues that this matter is "about a contractual arrangement between [Appellant] and [Victim]." Id. at 27. Appellant further asserts that "he intended to perform the work but was unable to do so due to illness and surgeries." Id. at 28.

Our standard of review for sufficiency claims is as follows:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

Commonwealth v. Tucker, 143 A.3d 955, 964 (Pa. Super. 2016) (brackets and citation omitted).

To sustain a conviction for theft by unlawful taking or disposition, the Commonwealth must prove that a person has "take[n], or exercise[d]

- 13 -

unlawful control over, movable property of another with intent to deprive him thereof." 18 Pa.C.S. § 3921(a).

The Commonwealth may prove the intent necessary for theft by unlawful taking or disposition "either by showing an intent to withhold property of another permanently or by showing an intent to dispose of the property so as to make it unlikely that the owner will recover it." Commonwealth v. Goins, 867 A.2d 526, 530 (Pa. Super. 2004) (internal quotation marks, brackets, and citation omitted). The Commonwealth may establish intent with circumstantial evidence. Commonwealth v. Haines, 442 A.2d 757, 759 (Pa. Super. 1982).

In challenging whether the Commonwealth presented sufficient evidence of intent, Appellant relies on Commonwealth v. Gallo, 373 A.2d 1109 (Pa. 1977). In Gallo, the defendant contacted a contractor and offered to create a brochure in exchange for advertising fees that would promote the contractor's business and would contain advertisements for the contractor's subcontractors and suppliers. Id. at 1110. Gallo provided his address and phone number, and when the brochure was not completed, the contractor attempted to contact Gallo at the number and address provided. Id. The Pennsylvania Supreme Court noted that "if [Gallo's] conviction for theft by deception is to be sustained, it must be because [he] never intended to perform his part of the contract . . . ." Id. The theft by deception statute states that "deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the

- 14 -

promise." 18 Pa.C.S. § 3922(a)(1). The Court indicated that the record did not show any evidence of Gallo's intent except his failure to perform. Gallo, 373 A.2d at 1111. Indeed, the Court held that by providing his correct contact information, Gallo showed the lack of an intention to deceive. Id. Thus, the Court reversed Gallo's conviction of theft by deception.

Gallo is distinguishable from the instant matter because it deals with theft by deception rather than theft by unlawful taking or disposition. The theft by deception statutory provision specifically states that "deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise." 18 Pa.C.S. § 3922(a)(1). This proviso is not part of the theft by unlawful taking or disposition statutory provision. Furthermore, in Gallo, the Supreme Court found the lack of an intention to deceive, which is not an element of theft by unlawful taking or disposition. Thus, the analysis in Gallo is inapposite to the instant matter.

Here, Appellant's intent can be inferred because he testified that he kept the money and admitted to spending it. See N.T., 11/21/17, at 51. Furthermore, even after multiple attempts by both Victim and the State Police to contact Appellant, he could not be contacted until over one year and nine months after Victim gave the $2,500 to Appellant. Appellant's disposal of the $2,500 by spending it made it unlikely that Victim would recover the money. See Goins, 867 A.2d at 530. Altogether, the circumstances permit Appellant's criminal intent to be inferred. See Haines, 442 A.2d at 759. As

- 15 -

to Appellant's argument that this was a contractual obligation that he could not perform due to health reasons, it was for the jury to weigh the credibility of Appellant's testimony. Thus, the Commonwealth presented sufficient evidence to sustain Appellant's conviction of theft by unlawful taking or disposition. See Tucker, 143 A.3d at 964.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/18/2018