J-S28032-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JESUS DELVALLE, | |
| Appellant | No. 3465 EDA 2014 |

Appeal from the Judgment of Sentence November 3, 2014
in the Court of Common Pleas of Bucks County
Criminal Division at No.: CP-09-CR-0002812-2014

BEFORE:  BOWES, J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED MAY 11, 2016**

Appellant, Jesus Delvalle, appeals from the judgment of sentence entered on November 3, 2014, following his jury conviction of possession with intent to deliver (PWID)[1] heroin and related offenses.  On appeal, Appellant challenges the denial of his motion for a change of venue and the admission of evidence regarding a firearm recovered from his vehicle.  For the reasons discussed below, we affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. § 780-113 (a)(30).

We take the underlying facts and procedural history in this matter from the trial court's November 6, 2015 opinion and our independent review of the certified record.

> On or around December 22, 2013, the Newtown Township Police Department investigated a brand of heroin labeled "Watch the Throne." Detective Dale Keddie previously investigated this brand and was aware of two cell phone numbers tied to the "Watch the Throne" brand, which he passed along to Detective Jason Harris to further investigate. (These cell phone numbers became known to police during the investigation of a fatal overdose in Bucks County. However, no evidence was presented to the jury about the fatality.) Detective Harris received records from the cellular provider, which revealed that the subscriber for the number 267-588-2933 was the Appellant, and the subscriber for the number 267-600-6763 was Domingo Cruz.

> On or around January 7, 2014, Detective Keddie contacted Officer Richard Gramlich of the Philadelphia Police Department to conduct an undercover investigation of the Appellant. On January 15, 2014, Officer Gramlich placed a call to the Appellant's cell phone, identified himself as "Ricky Fish," and spoke to Wilcidez Nunez about purchasing heroin. Officer Gramlich told Mr. Nunez that he was coming from Bristol, Bucks County. When he met Mr. Nunez that day, he purchased four bundles of "Real Steel" brand heroin, which Mr. Nunez removed from a pink zipper pouch. Later that day Officer Gramlich called Mr. Nunez to request the "Watch the Throne" brand, but Mr. Nunez informed him that that brand was no longer in existence, and that the new brand was "Real Steel."

> On January 29, 2014, Officer Gramlich parked at the Home Depot on 1336 Bristol Pike in Bensalem, Bucks County, and made calls to both 267-588-2933 and 267-600-6763. Officer Gramlich spoke to Mr. Nunez as well as another individual, who identified himself as Kenko, to arrange for the purchase of heroin. Later that day, Officer Gramlich purchased ten bundles of heroin from Mr. Nunez at 3700 Aramingo Avenue in Philadelphia. After this purchase, Officer Gramlich asked Mr. Nunez for a discount on his next purchase, and Mr. Nunez advised him that he would have to ask an individual named Johnny.

On January 30, 2014, Officer Gramlich called the 267-588-2933 number from the Home Depot parking lot in Bensalem and Johnny answered the phone. Johnny directed Officer Gramlich to wait an hour and call Kenko. When Officer Gramlich called the same number an hour later, Johnny answered and advised him to call the other phone number. Before Officer Gramlich could call Kenko, Mr. Nunez called Officer Gramlich and they arranged a purchase of heroin at the Aramingo Avenue location. Officer Gramlich purchased approximately ten bundles of heroin at the discount approved by Johnny.

On February 24, 2014, Officer Gramlich called the 267-588-2933 number and an individual named Juan answered. Officer Gramlich requested the same discount he was given previously, but Juan said he had to check with Johnny for approval. Subsequently, Juan sold Officer Gramlich ten bundles of heroin on Stella Street in Philadelphia. On March 13, 2014, Officer Gramlich arranged another purchase with Kenko, who sought approval for the same discount through Johnny. Later that day Juan again sold Officer Gramlich heroin.

From January 27, 2014 to March 21, 2014, Detective Joseph George of the Philadelphia Police Department conducted telephone pole camera video surveillance on 3076 Braddock Street in Philadelphia, which was confirmed to be the Appellant's residence. Detective George observed the Appellant going back and forth between the property and two vehicles, a Chevrolet pickup and an Oldsmobile, parked in front of the house. On numerous occasions, the Appellant would approach the Chevrolet pickup truck, look both ways, remove an item from [the] driver's door of the vehicle, and put it under his jacket before returning to the house. The Appellant would also frequently approach the Oldsmobile, remove an item from the trunk, and return to the Braddock Street residence. Both vehicles, a Chevrolet pickup truck and Oldsmobile sedan, were registered to the Appellant. Detective George never saw anyone else drive either vehicle.

Detective Michael Mosniak of the Bucks County District Attorney's Office executed a search warrant for the Oldsmobile. He discovered a large amount of cash in the trunk and a plastic bag full of documents in the glove compartment.

On March 13, 2014, Detective Steven Clark of the Bensalem Police Department conducted a drug investigation at the Neshaminy Motor Inn in Bensalem Township, Bucks County. During the investigation, he obtained a package of heroin with the label "Real Steel." Detective Clark also found a cell phone near the heroin, and discovered that a call was made from that cell phone to the 267-588-2933 number on March 11, 2014 at approximately 9:00 p.m. (This cell phone number was found during the investigation of a fatality. The Court precluded any evidence that this was a fatal overdose.)

On March 21, 2014, Officer Caroline Williams of the Philadelphia Police Department stopped a vehicle occupied by Benjamin Cruz-Hernandez, later determined to be Kenko, and arrested him. In the vehicle, Officer Williams recovered a cell phone for which the number was 267-600-6763. On that date, Sergeant Daniel Dutch of the Philadelphia Police Department arrested Wilcidez Nunez and seized a cell phone for which the number was 267-588-2933.

On March 21, 2014, Officer Joseph Press of the Philadelphia Police Department executed a search warrant for the Chevrolet pickup truck parked outside of 3076 Braddock Street. Officer Press found ten racks of heroin, a pink pouch containing cash and thirteen packets of heroin, and a black plastic bag containing a handgun and ammunition. The items were located on the driver's side. Detective Keddie, who also participated in the search of 3076 Braddock Street and the vehicles, seized six thousand three hundred dollars from the Oldsmobile.

The Appellant, Wilcides Nunez, Jose Andeno (who referred to himself as Juan to Officer Gramlich) and Benjamin Cruz-Hernandez were arrested on March 21, 2014. The Appellant was asked some limited questions when he was arrested. Later that day, the Appellant was interviewed by Drug Enforcement Administration Agent Frank Costobile at the Philadelphia Field Division DEA. DEA Analyst Maria Cramer, who is fluent in Spanish, assisted with translation. Ms. Cramer read the Appellant his *Miranda*[2] rights from a Spanish *Miranda* rights

_____

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

form and he waived his rights. During the interview, the Appellant confirmed that he lived at 3076 Braddock Street in Philadelphia and that the heroin in the Chevrolet truck belonged to him. He also stated that Kenko, Jose, and Wil sold heroin for him on the street.

Mr. Nunez testified at trial that Johnny was the Appellant. He also testified that the Appellant was in charge of the heroin dealing organization. When Mr. Nunez worked for the Appellant, he reported to the Appellant's house each day to retrieve a cell phone and heroin, which he carried in a pink pouch. If a customer asked for a discount, Mr. Nunez had to seek approval from Johnny.

(Trial Court Opinion, 11/06/15, at 1-5) (record citations omitted).

On June 5, 2014, the Commonwealth filed a criminal information in Bucks County charging Appellant with PWID, three counts of criminal conspiracy,[3] criminal use of a communication facility,[4] and three counts of corrupt organizations.[5] (*See* Criminal Information, 6/05/14, at 1-2). Subsequently, Appellant sought a change of venue to Philadelphia County.[6] A hearing on Appellant's motion took place on August 8, 2014. On August 9, 2014, the trial court denied the motion. (*See* N.T. Suppression Hearing, 8/09/14, at 4).

_____

[3] 18 Pa.C.S.A. § 903.

[4] 18 Pa.C.S.A. § 7512(a).

[5] 18 Pa.C.S.A. § 911(b)(1)-(3).

[6] For reasons not readily ascertainable, the trial court did not docket Appellant's omnibus pre-trial motion seeking a change of venue until August 22, 2014, approximately two weeks after the trial court held a hearing on the motion.

A jury trial took place on September 10, through 12, 2014. During the trial, Appellant made an oral motion *in limine* to preclude testimony about the discovery of a gun in Appellant's vehicle. (*See* N.T. Trial, 9/10/14, at 164-65). On September 11, 2014, the trial court denied the motion. (*See* N.T. Trial, 9/11/14, at 76). On September 12, 2014, the jury found Appellant guilty of all charges with the exception of a single count of corrupt organizations. On November 3, 2014, the trial court sentenced Appellant to an aggregate term of incarceration of not less than twelve nor more than twenty-four years. On November 18, 2014, the trial court issued an amended sentencing order, reducing the sentence to not less than ten nor more than twenty years.

On November 26, 2014, Appellant filed the instant, timely appeal. On December 3, 2014, the trial court ordered Appellant to file a concise statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(b). On December 19, 2014, Appellant filed a timely Rule 1925(b) statement. On November 6, 2015, the trial court issued an opinion. *See* Pa.R.A.P. 1925(a).

On appeal, Appellant raises the following questions for our review:

1.      Did not the trial court err in denying the motion to set venue in Philadelphia rather than Bucks County, as the entirety of the case involved drug selling and an alleged drug racketeering organization in Philadelphia, with not even one criminal act by any defendant occurring elsewhere?

2.      Did not the trial court err in permitting introduction of a firearm and ammunition as there was no weapons charge, the firearm and ammunition were

irrelevant to the charges, and the impact of said evidence was unfairly prejudicial?

(Appellant's Brief, at 5) (unnecessary capitalization omitted).

In his first issue, Appellant argues that the trial court erred in denying his motion for a change of venue. (*See* Appellant's Brief, at 15-19). Specifically, Appellant claims that no "act, criminal or otherwise," happened in Bucks County. (*Id.* at 15). He claims he was prejudiced because he is Hispanic and less than five percent of Bucks County is Hispanic while more than thirteen percent of the population of Philadelphia County is Hispanic. (*See id.* at 18). We disagree.[7]

Initially, we note that, "[t]he standard of review for a denial of a motion for change of venue is whether there has been an abuse of discretion on the part of the trial judge." *Commonwealth v. Devries*, 112 A.3d 663, 666 (Pa. Super. 2015) (citation omitted). It is settled that all Courts of Common Pleas have statewide subject matter jurisdiction in criminal cases.

---

[7] The Commonwealth argues that Appellant waived his challenge to the trial court's refusal to change venue because he did not raise this claim prior to the conclusion of the preliminary hearing as required by Pa.R.Crim.P. 109 and 134. Pennsylvania Rule of Criminal Procedure 109 never mentions venue; rather it refers to a "defect in the form or content of a complaint, citation, summons, or warrant, or a defect in the procedures of these rules." Pa.R.Crim.P. 109. Thus, it is inapplicable. After a thorough review of the record, we believe that it is inappropriate to resolve this matter by waiver pursuant to Pa.R.Crim.P. 134 because the merits of the waiver issue were fully litigated below, without objection by the Commonwealth.

**See** 42 Pa.C.S.A. § 931(a); **see also Commonwealth v. Bethea**, 828 A.2d 1066, 1074 (Pa. 2003), *cert. denied*, 540 U.S. 1118 (2004).

> Venue challenges concerning the locality of a crime, . . . stem from the Sixth Amendment to the United States Constitution and Article I, § 9 of the Pennsylvania Constitution, both of which require that a criminal defendant stand trial in the county in which the crime was committed, protecting the accused from unfair prosecutorial forum shopping. Thus, proof of venue, or the locus of the crime, is inherently required in all criminal cases.

**Commonwealth v. Gross**, 101 A.3d 28, 33 (Pa. 2014). Moreover,

> [b]ecause the Commonwealth selects the county of trial, we now hold it shall bear the burden of proving venue is proper—that is, evidence an offense occurred in the judicial district with which the defendant may be criminally associated, either directly, jointly, or vicariously. Although our sister states are not in agreement as to the requisite degree of proof, we find the Commonwealth should prove venue by a preponderance of the evidence once the defendant properly raises the issue. Venue merely concerns the judicial district in which the prosecution is to be conducted; it is not an essential element of the crime, nor does it relate to guilt or innocence. Because venue is not part of a crime, it need not be proven beyond a reasonable doubt as essential elements must be. Accordingly, applying the preponderance-of-the-evidence standard to venue challenges allows trial courts to speedily resolve this threshold issue without infringing on the accused's constitutional rights. Like essential elements of a crime, venue need not be proven by direct evidence but may be inferred by circumstantial evidence. Appellate review of venue challenges, similar to that applicable to other pre-trial motions, should turn on whether the trial court's factual findings are supported by the record and its conclusions of law are free of legal error.

*Id.* at 33-34 (footnotes and citations omitted). Further, even if venue is improper in the county of trial, dismissal of the case is not the proper remedy. **See id.** at 34. Because the matter of venue is purely a procedural one, Appellant is not entitled to relief on his claim unless he establishes

actual prejudice. *See* Pa.R.Crim.P. 109; *see also Commonwealth v. Miskovitch*, 64 A.3d 672, 689 (Pa. Super 2013), *appeal denied*, 78 A.3d 1090 (Pa. 2013) (citation omitted). In cases where criminal activity occurs in two judicial districts, our Court examines whether there is a "nexus" with the county where the case was tried. *Miskovitch*, *supra* at 688.

Here, there was clearly a nexus between Bucks County and the crimes. As the trial court stated:

> During the pretrial hearing on August 8, 2014, the parties stipulated that the connections to Bucks County were the telephone calls to and from Officer Gramlich, who identified himself as being from Bucks County and declared his intent to resell the heroin in Bucks County, telephone calls from the phone recovered at the Neshaminy Motor Inn in Bucks County, and three overdoses, two fatal, that occurred in Bucks County from the "Watch the Throne" brand. Each of the overdose victims had one or both of the organization's cell phone numbers saved in their cell phones. Further, after the Appellant was arrested, the investigating officers continued to monitor the two cell phones, and approximately five out of eleven customers looking to purchase large amounts of heroin were from Bucks County. The Appellant argued that the transactions, stash houses, and vehicles were located in Philadelphia and that a Bucks County trial would be prejudicial to the Appellant because of the difference between the demographics of Bucks County and Philadelphia County.
>
> Here, the nexus between the criminal activity and Bucks County was sufficient because the Appellant's employees received calls from Officer Gramlich and sold heroin to him with the awareness that he was coming from Bucks County and would be reselling the heroin in Bucks County. Importantly, on one occasion, Mr. Nunez called Officer Gramlich in Bucks County to arrange a heroin sale. The investigation also revealed several overdose victims and other heroin purchasers in Bucks County who used the Appellant's heroin brand and had done business with the two telephone numbers belonging to Appellant's organization.

(Trial Ct. Op., at 8) (record citations omitted). We agree with the trial court that this is more than sufficient to establish a nexus between Bucks County and the criminal activities. *See Miskovitch*, *supra* at 688 (finding sufficient nexus between Allegheny County and criminal activity, even though robbery at issue took place in Westmoreland County, where car used in robbery was stolen from Allegheny County and later abandoned there); *see also Gross*, *supra* at 34-35.

Moreover, even if Appellant had demonstrated that there was an insufficient nexus between Bucks County and the criminal activities, his claim would fail because he has not shown prejudice. In order to demonstrate prejudice, Appellant must show that he suffered

> undue expense in appearing before the court . . ., that he was unable to obtain the presence of witnesses or evidence related to his defense because of the location, that the Commonwealth engaged in forum shopping in order to achieve an advantage over the defense, or that he was deprived of a fair and impartial trial.

*Bethea*, *supra* at 1077.

Here, Appellant has not done so; instead, he offers a speculative and bald argument that, because Philadelphia County has a greater percentage of Hispanics, they would have been less likely to be influenced by the

"inflammatory and improper" statements in the Commonwealth's closing.[8]
(Appellant's Brief, at 19; *see id.* at 18-19).  Firstly, Appellant has pointed to
nothing that would demonstrate that merely because Philadelphia County
has a larger Hispanic population than Bucks County, this would have
resulted in more Hispanics on the jury.[9]  Secondly, and more importantly,
Appellant's argument, in essence, is a claim that a more Hispanic and urban
jury would have ignored the overwhelming evidence discussed in the trial
court's opinion, not to mention the trial court's instructions, and acquitted
Appellant.  We reject this contention.  Further, it is clear that while Appellant
has a right to a jury selected by non-discriminatory criteria, *see Batson*,
*supra* at 85-86, he is not entitled to a jury with the racial make-up of his
choice.  *See Commonwealth v. Carson*, 913 A.2d 220, 235 (Pa. 2006),
*cert. denied*, 552 U.S. 954 (2007) ("a defendant's right to an impartial jury

---

[8] We note that Appellant does not argue on appeal that the Commonwealth committed prosecutorial misconduct in its closing arguments.  Further, we note the sole legal authority Appellant cites in support of his claim, *Commonwealth v. Poplawski*, 852 A.2d 323, 328 (Pa. Super 2004), is utterly inapposite, since it concerns the grant of PCRA relief based upon a claim that trial counsel was ineffective for failing to object to the prosecutor's opening and closing statements.  *See Poplawski*, *supra* at 325-26.

[9] Appellant does not describe the racial make-up of the Bucks County jury, and has not raised a claim that the prosecutor exercised peremptory strikes in a racially discriminatory manner in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986).

of his peers does not entitle him to a jury of his choice.") (citation omitted).

The United States Supreme Court has aptly stated:

> The American tradition of trial by jury, considered in connection with either criminal or civil proceedings, necessarily contemplates an impartial jury drawn from a cross-section of the community. This does not mean, of course, that every jury must contain representatives of all the economic, social, religious, racial, political and geographical groups of the community; frequently such complete representation would be impossible.

*Thiel v. Southern Pacific Co.*, 328 U.S. 217, 220 (1946) (citations omitted). Thus, Appellant has not shown that he was prejudiced by having the case venued in Bucks County. *See Bethea*, *supra* at 1077. His first claim lacks merit.

In his second issue, Appellant maintains that the trial court erred in denying his motion *in limine* to preclude evidence of the gun and ammunition found in his motor vehicle. (*See* Appellant's Brief, at 20-23). Specifically, Appellant claims it was "prejudicial error" to admit evidence of a firearm and a large amount of ammunition where "there was no weapons charge leveled against [A]ppellant or any codefendant." (Appellant's Brief, at 20). Also, Appellant contends that the evidence of the firearm was offered solely to show that he was a violent person. (*See* Appellant's Brief, at 20-23). Again, we disagree.

Our standard of review concerning the grant or denial of a motion *in limine* is well settled.

> A motion *in limine* is a procedure for obtaining a ruling on the admissibility of evidence prior to or during trial, but before

the evidence has been offered. A trial court's decision to grant or deny a motion *in limine* is generally subject to an evidentiary abuse of discretion standard of review.

The admissibility of evidence is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error.

The term discretion imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

Where the discretion exercised by the trial court is challenged on appeal, the party bringing the challenge bears a heavy burden. . . . [I]t is not sufficient to persuade the appellate court that it might have reached a different conclusion if, in the first place, charged with the duty imposed on the court below; it is necessary to go further and show an abuse of the discretionary power. . . . We emphasize that an abuse of discretion may not be found merely because the appellate court might have reached a different conclusion, but requires a showing of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous.

To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

***Commonwealth v. Williams***, 91 A.3d 240, 248-49 (Pa. Super. 2014) (*en banc*) (quotation marks, some indentations, and citations omitted).

Further, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the

- 13 -

action more probable or less probable that it would be without the evidence." Pa.R.E. 401. "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact." *Commonwealth v. Loughnane*, 128 A.3d 806, 818 (Pa. Super. 2015) (citation omitted). This Court has stated:

> Relevant evidence may nevertheless be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
>
> Because all relevant Commonwealth evidence is meant to prejudice a defendant, exclusion is limited to evidence so prejudicial that it would inflame the jury to make a decision based upon something other than the legal propositions relevant to the case. As this Court has noted, a trial court is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts form part of the history and natural development of the events and offenses with which [a] defendant is charged.

*Commonwealth v. Broaster*, 863 A.2d 588, 592 (Pa. Super. 2004), *appeal denied*, 876 A.2d 392 (Pa. 2005) (quotation marks, footnote and citations omitted).

As noted above, Appellant argues that evidence was improperly admitted under Pennsylvania Rule of Evidence 404, which provides in pertinent part:

**(b) Crimes, Wrongs or Other Acts.**

*(1) Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show

- 14 -

that on a particular occasion the person acted in accordance with the character.

*(2) Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b)(1)-(2).

Here, at trial, Appellant claimed he was an honest businessperson who bought and sold used cars, not a drug dealer. (*See* N.T. Trial, 9/12/14, at 94-110). The presence of a firearm in close proximity to drugs in Appellant's car, (*see* N.T. Trial, 9/11/14, at 78-84) was relevant to prove not only that Appellant was a drug dealer but also the person in charge of the organization. *See Commonwealth v. Watley*, 81 A.3d 108, 115 (Pa. Super. 2013), *appeal denied*, 95 A.2d 277 (Pa. 2014) (noting possession of gun is one of several factors in determining whether drugs are for personal use or for sale); *see also*, *United States v. Adams*, 759 F.2d 1099, 1108-09 (3d Cir. 1985), *cert. denied*, 474 U.S. 906 (1985)[10] (recognizing weapon seized from alleged drug dealer's home as probative of "motive, opportunity, intent, [and] plan" because such weapons are "as much 'tools of the trade' as drug paraphernalia"). As the trial court stated:

---

[10] "While we recognize that federal court decisions are not binding on this court, we are able to adopt their analysis as it appeals to our reason." *Kleban v. Nat. Union Fire Ins. Co. of Pittsburgh*, 771 A.2d 39, 43 (Pa. Super. 2001) (citation omitted).

The guns and rounds were admitted into evidence because they were found in close proximity to drugs in a vehicle that the Appellant repeatedly accessed. Indeed, he was seen removing items from the truck and it was titled in his name. . . . The probative value of this evidence outweighed its prejudice because this weapon would logically be used to protect Appellant and the drugs found in the truck.

(Trial Ct. Op., at 13). Thus, we find no error in the admission of this evidence.

Moreover, even if we were to find error, Appellant has not shown that he was prejudiced. Our Supreme Court has stated:

An error will be deemed harmless where the appellate court concludes beyond a reasonable doubt that the error could not have contributed to the verdict. If there is a reasonable possibility that the error may have contributed to the verdict, it is not harmless. In reaching that conclusion, the reviewing court will find an error harmless where the uncontradicted evidence of guilt is overwhelming, so that by comparison the error is insignificant. . . .

***Commonwealth v. Mitchell***, 839 A.2d 202, 214-15 (Pa. 2003) (citation omitted).

Here, the evidence regarding the gun came through the testimony of Philadelphia Police Officer Joseph Press, who searched Appellant's truck. (***See*** N.T. Trial, 9/11/14, at 81-111).

[Commonwealth]. What are some of the items that you found [in the truck] that you and I have discussed prior to your coming here today?

[Officer Press]. I recovered a black plastic bag containing ten racks of heroine (sic), alleged heroine (sic). Also a pink purse containing 13 packets of alleged heroine (sic) and $288 USC. As well I recovered another black plastic bag containing a handgun, a Ruger P89, serial number 314 dash 0—80262. Also two empty

- 16 -

magazines, one magazine containing 15 found—15 rounds of nine millimeter live rounds. Another magazine containing 12 9 millimeter rounds. And a third magazine containing 29 9 millimeter rounds.

[Trial Court]: Members of the jury, I will instruct you that [Appellant] is not charged with any violation of the law with respect to a weapon.

*   *   *

[Commonwealth]. Can you describe, Officer Press, how close in proximity were these items all to each other?

[Officer Press]. They were all right next to each other . . .

(*Id.* at 83-84). The Commonwealth then displayed the guns and bullets to the jury. (*See id.* at 86-88). This was the only mention of the gun by the Commonwealth. As discussed above, the evidence against Appellant concerning the sale of narcotics was overwhelming. This evidence included surveillance evidence that demonstrated Appellant's control of the heroin stashed in his truck, the monies concealed in another of Appellant's vehicles, his connection to the cell phones used in the operation, the testimony of one of his employees, and Appellant's own admissions to the police. Given this, the prejudice arising from a brief mention of a gun seized during the search of Appellant's vehicle was *de minimis*. **See Commonwealth v. Passmore**, 857 A.2d 697, 711 (Pa. Super. 2004), *appeal denied*, 868 A.2d 1199 (Pa. 2005) (error is harmless when "the prejudice was *de minimis*[.]").

Moreover, the trial court provided three cautionary instructions to which defense counsel agreed, (*see* N.T. Trial, 9/11/14, at 84, 275-76; N.T.

Charge, 9/12/14, at 26), and which the jury is presumed to have followed, *see Commonwealth v. Spotz*, 716 A.2d 580, 587 (Pa. 1998), *cert. denied*, 526 U.S. 1070 (1999). Therefore, we conclude that Appellant has not demonstrated that he was prejudiced by the introduction of the evidence.

Accordingly, for the reasons discussed above, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/11/2016