J-S15015-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JEREMIAH STEFAN RAFAKIE BOWENS | : | |
| | : | |
| Appellant | : | No. 2371 EDA 2025 |

Appeal from the Judgment of Sentence Entered April 25, 2025
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR-0000225-2021

BEFORE: OLSON, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY OLSON, J.: **FILED JUNE 8, 2026**

Appellant, Jeremiah Stefan Rafakie Bowens, appeals from the judgment of sentence entered April 25, 2025, as made final by the denial of his post-sentence motion on August 26, 2025. We affirm.

In late 2020, the Chester County Detectives Drug Task Force identified a residence along West Parkesburg Road in West Caln Township, Chester County, Pennsylvania, as a source of supply of methamphetamine. On December 4, 2020, Chester County Detectives executed a search warrant and apprehended the three individuals who were present at the residence when the warrant was served. Upon questioning, one individual informed detectives that Appellant, who lived in Philadelphia, Pennsylvania, supplied the narcotics distributed from the residence along West Parkesburg Road. The individual

_____

[*] Former Justice specially assigned to the Superior Court.

indicated that they participated in the operation by purchasing the narcotics from Appellant in Philadelphia, transporting the narcotics back to the residence along West Parkesburg Road, and giving the narcotics to another individual who subsequently distributed them. This individual then agreed to work as a confidential informant ("CI") to assist the detectives in their investigation into Appellant's activities.

The CI, in conjunction with Chester County Detectives, set up a controlled purchase that same day, December 4, 2020, *via* telephone. The CI subsequently travelled to the agreed-upon location – an apartment on Parker Avenue in Philadelphia – and met with Appellant, who supplied the CI with 222.92 grams of methamphetamine. Two additional controlled purchases took place with the assistance of the CI, one on December 7, 2020 and the other on December 10, 2020. Like the original controlled purchase, the CI set up the transactions by contacting Appellant *via* telephone and traveling to the apartment in Roxborough, Philadelphia. Appellant, however, was not present at the apartment on either December 7, 2020 or December 10, 2020. Instead, the CI met with Appellant's girlfriend, Alicia Griffin. On December 7, 2020, the CI obtained 214.18 grams of methamphetamine and 4.18 grams of fentanyl and tramadol during the controlled purchase. On December 10, 2020, the CI obtained 223.81 grams of methamphetamine and 5.87 grams of fentanyl and tramadol during the controlled purchase.

On December 11, 2020, the Chester County Detectives executed a search warrant for Appellant's apartment on Parker Avenue in Philadelphia.

Appellant and Ms. Griffin were at the apartment at that time. The search revealed, *inter alia*, additional drugs, namely, fentanyl, "$39,498.00, with $6,380.00 of that amount being pre-recorded buy money," and other drug paraphernalia. Trial Court Opinion, 10/8/25, at 5. Appellant was later charged with various drug-related offenses.

On January 21, 2021, a preliminary hearing was held and the charges were bound over to the Chester County Court of Common Pleas. Appellant later sought a change of venue to Philadelphia County, Pennsylvania, but the trial court denied Appellant's motion on June 17, 2024.[1] The case proceeded to a bench trial on February 19, 2025. On February 21, 2025, the trial court convicted Appellant of six counts of possession with the intent to deliver a controlled substance ("PWID"); four counts of criminal conspiracy to commit PWID; and three counts of criminal use of a communication device.[2] On April

_____

[1] On June 4, 2021, Appellant filed a motion to dismiss the prosecution, asking the trial court to dismiss the charges for lack of jurisdiction pursuant to **Commonwealth v. McPhail**, 631 A.2d 1305 (Pa. Super. 1993). Appellant alleged that "the evidence adduced at the preliminary hearing [demonstrated] that all alleged drug activity occurred in Philadelphia, Pennsylvania" and that Chester County "simply ha[d] no connection to the Philadelphia narcotics activity." Appellant's Motion to Dismiss, [6/4/21], at ¶ 4. Ultimately, after conducting a hearing, the trial court denied Appellant's motion on January 24, 2022. Thereafter, Appellant filed a *pro se* motion, arguing that Chester County was not the proper venue and that the trial court should transfer the matter to Philadelphia County. **See** Appellant's *Pro Se* Motion to Change Venue, 6/4/24, at 1-7. Appellant's counsel subsequently adopted the *pro se* filing, but the trial court denied the motion on June 17, 2024. In so doing, the trial court relied upon the reasoning set forth in its prior January 7, 2022 order. **See** Trial Court Order, 6/17/24, at fn. 1.

[2] 35 P.S. §780-113(a)(30); 18 Pa. C.S.A. §§ 903(a) and 7512, respectively.

25, 2025, the trial court sentenced Appellant to an aggregate term of 15 to 30 years' incarceration. Appellant filed a post-sentence motion on May 1, 2025, asking the trial court to reconsider his sentence. The trial court denied Appellant's post-sentence motion on August 26, 2025. This timely appeal followed.

Appellant raises the following issues for our consideration.

1. Did the trial court err in denying Appellant's venue challenge where all criminal conduct occurred in Philadelphia County?

2. Was the evidence insufficient to convict Appellant of delivery for the second and third controlled purchases where the Commonwealth's own witness testified that Appellant was not present?

3. Did the trial court abuse its discretion by imposing consecutive sentences totaling 15 to 30 years[' incarceration] without adequate consideration of Appellant's rehabilitative needs?

4. Did the trial court abuse its discretion by considering [the] speculative concerns about the confidential informant's safety [during Appellant's sentencing] where the [Commonwealth] admitted there was no evidence of threatening conduct?

Appellant's Brief at 11.

In his first issue, Appellant contends that the trial court erred in denying his request for a change of venue. Appellant claims that "all criminal conduct charged in this case occurred in Philadelphia County," not Chester County. Appellant's Brief at 32. On this basis, Appellant demands relief. Appellant's claim fails.

"Appellate review of venue challenges, similar to that applicable to other pre-trial motions, should turn on whether the trial court's factual findings are supported by the record and its conclusions of law are free of legal error." *Commonwealth v. Gross*, 101 A.3d 28, 33-34 (Pa. 2014).

Our Supreme Court previously explained:

> Venue challenges concerning the locality of a crime, . . . stem from the Sixth Amendment to the United States Constitution and Article I, § 9 of the Pennsylvania Constitution, both of which require that a criminal defendant stand trial in the county in which the crime was committed, protecting the accused from unfair prosecutorial forum shopping. Thus, proof of venue, or the locus of the crime, is inherently required in all criminal cases.

*Id.* at 33. Moreover, our Supreme Court determined that the Commonwealth must establish venue by a preponderance of the evidence because it is "not an essential element of the crime, nor does it relate to guilt or innocence." *Id.* The Commonwealth may do so by circumstantial evidence. *Id.* Thus, the Commonwealth must establish a "nexus" with the county where the case is to be tried if the criminal activity takes place in more than one judicial district. *Commonwealth v. Mikovitch*, 64 A.3d 672, 689 (Pa. Super. 2013); *see also* 18 Pa.C.S.A. § 102(a)(1) (explaining that an individual may be convicted in any county if, among other things, his conduct "which is an element of the offense or the result of which is such [that] an element occurs within the [county]."). Importantly, this "nexus" in a prosecution for criminal conspiracy can be established in "any county where the unlawful combination was formed, or any county where an overt act was committed by any of the

conspirators in furtherance of the unlawful combination." **Gross**, 101 A.3d at 34 (citation omitted). Finally, we note that, because the "choice of venue is purely procedural, and not jurisdictional in nature," Appellant "must demonstrate prejudice in order to be entitled to relief." **Mikovitch**, 64 A.3d at 689.

Here, the trial court concluded that a nexus did, in fact, exist in this case between Chester County and certain alleged criminal activity deemed sufficient to establish venue. Trial Court Opinion, 1/24/22, at 3. The trial court explained:

> The evidence presented demonstrates that [Appellant's] co-conspirator, the CI, took steps in Chester County in furtherance of the conspiracy. Specifically, the CI placed calls from Chester County wherein [Appellant] agreed to sell the Chester County co-conspirator illegal drugs which the evidence suggests would then be distributed within Chester County. [Appellant] then directed the CI to leave Chester County and travel to Philadelphia to complete the drug transactions. By consenting to and ultimately consummating the sale[s, Appellant] could be found to have conspired to participate in drug activities in Chester County.

**Id.** at 4.

Our review of the certified record confirms the trial court's findings. First, it was established that the CI, while in Chester County, contacted Appellant to arrange a drug purchase. **See** N.T. Hearing, 12/14/21, at Exhibit C-4 (Preliminary Hearing Transcripts, 1/21/21, at 29). Second, Appellant agreed to supply illegal drugs to the CI. Third, Appellant was aware the illegal drugs provided to the CI would ultimately be distributed in Chester County.

*See* N.T. Hearing, 12/14/21, at 30 (hearing testimony indicating that, after Appellant's arrest, a detective identified himself as working with "the Chester County Drug Task Force," and Appellant responded: "[O]h, this is about methamphetamine."). We therefore agree with the trial court's conclusion that a sufficient nexus existed between Chester County and the criminal activity *sub judice*.

We further note that, even if Appellant demonstrated that the nexus was insufficient, Appellant's claim would still fail because he did not establish prejudice. In order to demonstrate prejudice, Appellant must show that he suffered

> undue expense in appearing before the court . . . that he was unable to obtain the presence of witnesses or evidence related to his defense because of the location, that the Commonwealth engaged in forum shopping in order to achieve an advantage over the defense, or that he was deprived of a fair and impartial trial.

*Commonwealth v. Bethea*, 828 A.2d 1066, 1077 (Pa. 2003). On appeal, Appellant utterly failed to contend, much less demonstrate, that he was prejudiced by having the case venued in Chester County. Therefore, Appellant is not entitled to relief.

In his second issue, Appellant challenges the sufficiency of the evidence supporting his convictions for PWID. More specifically, Appellant contends that the Commonwealth failed to present evidence that he participated in the second and third controlled purchases because Appellant was not present during the exchanges. Appellant's claim fails.

We review Appellant's sufficiency of the evidence challenge under the following standard:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Callen*, 198 A.3d 1149, 1167 (Pa. Super. 2018) (citations and quotation marks omitted).

Our Supreme Court previously explained:

> The offense of [PWID] is provided for in section 780–113(a)(30) of The Controlled Substance, Drug, Device and Cosmetic Act, (the "Act"). According to that section, the offense occurs in the following circumstances:
>
> > Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780–113(a)(30). The term delivery, as used in this section, is defined by the Act as "the actual, constructive, or attempted transfer from one person to another of a controlled substance, other drug, device or cosmetic whether or not there is an agency relationship." 35 P.S. § 780–102. Thus, for a defendant to be liable as a principal for the delivery of a controlled substance there must be evidence that he knowingly made an actual, constructive, or attempted transfer of a controlled substance to another person without the legal authority to do so. *See Commonwealth v. Metzger*, 372 A.2d 20, 22 ([Pa. Super.] 1977) (" [t]he offensive conduct is simply the 'actual, constructive or attempted transfer from one person to another' of the prohibited substance").

A defendant actually transfers drugs whenever he physically conveys drugs to another person. *See Commonwealth v. Cameron*, 372 A.2d 904, 907 ([Pa. Super.] 1977); Black's Law Dictionary 1504 (7th ed. 1999). Similarly, as was well explained by the Superior Court below, a defendant constructively transfers drugs when he directs another person to convey drugs under his control to a third person or entity. *See [Commonwealth v.] Murphy*, 795 A.2d [1025,] 1031-[10]33 [(Pa. Super. 2002)] (finding, after review of dictionary definition of term as well as interpretation of term by other jurisdictions, that "constructive transfer" means that transferor directed another to convey drugs that were under the transferor's control to a third person); *see also* Black's Law Dictionary 1503 (7th ed. 1999).

*Commonwealth v. Murphy*, 844 A.2d 1228, 1233–1234 (Pa. 2004) (parallel citations omitted).

The trial court summarized the evidence presented by the Commonwealth in this matter as follows.

The Commonwealth presented evidence of three controlled buys, and drugs found after the execution of a search and arrest warrant. The Commonwealth presented the testimony of a [CI] who appeared in the trial[. The CI] had been in a residence [in Chester County] during a drug bust by law enforcement and agreed to cooperate. [The CI] purchased narcotics in Philadelphia and brought them back to Chester County - and

- 9 -

had been doing this illegally prior to [cooperating] with police. During the first controlled buy, the CI was provided with a recording device and police searched both [the CI's] person and car, as well as [the CI's personal effects. The CI] was provided with buy money. [The CI] set up the first controlled buy *via* telephone. [The CI] went to the agreed-upon location - an apartment complex in the Roxborough area of Philadelphia - parked . . . and buzzed the front door to be let into the apartment complex. [The CI] was buzzed in, went into the building, and entered [] Appellant's apartment. [] Appellant was present. [The] CI provided [] Appellant with the buy money and received the narcotic crystal methamphetamine[. The] CI met with law enforcement afterward in Philadelphia – [the CI] was searched again, and [] provided the drugs to police.

A few days after this, the CI, at the direction of law enforcement, set up a second controlled buy *via* telephone where [the CI] traveled to the same Roxborough apartment complex in Philadelphia. [] Appellant was not present; [] Appellant's girlfriend ([Ms.] Griffin) was. [The] CI provided the money to [Ms. Griffin] and received the drugs. [The] CI realized [they were] shorted a bundle of heroin and called Appellant who [told the] CI that he would take care of it next time[.] While [the] CI was still at the apartment, [Ms. Griffin] thought [the] CI owed more money and [Ms. Griffin] called Appellant who indicated that [the] CI was good (*i.e.* no more money owed).

The third controlled buy was set up within a few days of the second controlled buy. [The] CI contacted Appellant *via* telephone on the same number [they] had contacted him previously. [The CI] again met with law enforcement first, who searched [the CI] and provided buy money. [The CI] traveled to the same apartment complex in Philadelphia but no one answered the buzzer. Approximately 25 to 30 minutes later, [Ms. Griffin] (Appellant's girlfriend) showed up crying on her telephone. [Ms. Griffin] let [the] CI into the apartment and [the CI] received crystal [methamphetamine] and the extra heroin owed, and [the] CI gave [Ms. Griffin] the money. [The] CI met with law enforcement afterwards and provided them the narcotics. … [The] CI further identified Appellant in court as the individual who gave [him/her methamphetamine] on the first controlled buy. [The] CI also testified that[, prior to cooperating with law enforcement, he/she would] take the

drugs [] purchased from Appellant to an individual in Sadsbury Township, Chester County, Pennsylvania.

The Commonwealth presented the testimony of [Ms.] Griffin, who was the Appellant's girlfriend during the time period in question in the present case. She had previously pled guilty to [PWID] and criminal conspiracy to commit [PWID], and was awaiting sentencing. In 2020, during the time period in question, [Ms. Griffin] gave a "white [person]" something that her boyfriend (Appellant) asked her to. [Ms. Griffin] was present when the apartment was searched by law enforcement and approximately $30,000[.00] in cash was found - as well as drugs. Although she was a drug user, [Ms. Griffin] testified that she did not use [methamphetamine], heroin, or fentanyl.

***

The Commonwealth presented the testimony of Detective Jonathan Shave. Detective Shave testified regarding the procedure of how [the] CI was presented as a possible confidential informant, vetted, and ultimately utilized by law enforcement as such. Detective Shave was present with [the] CI when they contacted [] Appellant *via* telephone to arrange the purchase of narcotics. [The] CI travelled to [an apartment along] Parker Avenue in Roxborough[, Philadelphia. The] CI was searched, including [his/her] vehicle and personal effects, and [the CI] was provided with $1,800[.00] in pre-recorded U.S. currency.

Detective Shave testified that the first controlled buy was on December 4, 2020. [The] CI communicated with [] Appellant through text message and telephone calls. [The] CI was under police surveillance, and when [he/she] left the apartment complex, law enforcement met the CI at a Wawa where [he/she] turned over a plastic bag containing what appeared to be [methamphetamine]. It was later confirmed by lab results to be 222.92 grams of methamphetamine.

Detective Shave further testified that the second controlled buy was on December 7, 2020. [The] CI contacted Appellant *via* telephone. While [the] CI was driving to the apartment complex, police surveillance was also following Appellant in his vehicle and knew that he was in the apartment complex. A non-recorded telephone call was made by [the] CI to Appellant over [a drug dispute].

- 11 -

> Detective Shave testified that the third controlled buy occurred on December 10, 2020. Police had obtained a court order to track the Appellant's vehicle - they knew at the time of the controlled buy he was near Allentown, [Pennsylvania] and not at the apartment complex. He testified further regarding the amount of narcotics that [the] CI purchased in each controlled buy.

Trial Court Opinion, 10/8/25, at 2-5 (unnecessary capitalization omitted). This evidence is sufficient to sustain Appellant's PWID conviction. Even though Appellant was not physically present during the second and third transactions, the evidence, when viewed in the light most favorable to the Commonwealth, demonstrates that Appellant directed his girlfriend, Ms. Griffin, to provide the CI with the illegal drugs. Appellant, therefore, is not entitled to relief.

In his final issues, Appellant raises several challenges to the discretionary aspects of his sentence. First, Appellant contends that the trial court "failed to adequately consider his rehabilitative needs as required by 42 Pa.C.S.A. § 9721(b)." Appellant's Brief at 58. Second, Appellant claims that the trial court failed to "accord appropriate weight" to testimony admitted during his sentencing hearing that demonstrated his "genuine transformation" while incarcerated. *Id.* Third, Appellant challenges the "consecutive structure" of his sentence, claiming that it is "clearly unreasonable in light of the non-violent nature of the offenses." *Id.* Finally, Appellant argues that the trial court committed an abuse of discretion by considering the Commonwealth's "speculative concerns about the [CI's] safety" during sentencing. *Id.* at 69. Appellant contends that the trial court relied upon this "improper factor" during sentencing and that the trial court's reliance is

- 12 -

demonstrated by its emphasis upon the "danger to the community" while imposing his sentence. *Id.*

This Court previously explained:

It is well-settled that "the right to appeal a discretionary aspect of sentence is not absolute." *Commonwealth v. Dunphy*, 20 A.3d 1215, 1220 (Pa. Super. 2011). Rather, where an appellant challenges the discretionary aspects of a sentence, we should regard his[, or her,] appeal as a petition for allowance of appeal. *Commonwealth v. W.H.M.*, 932 A.2d 155, 162 (Pa. Super. 2007). As we stated in *Commonwealth v. Moury*, 992 A.2d 162 (Pa. Super. 2010):

An appellant challenging the discretionary aspects of his[, or her,] sentence must invoke this Court's jurisdiction by satisfying a four-part test:

We conduct a four-part analysis to determine: (1) whether appellant [] filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, [*see*] Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

[*Moury*, 992 A.2d] at 170 [(citation omitted)]. We evaluate on a case-by-case basis whether a particular issue constitutes a substantial question about the appropriateness of sentence. *Commonwealth v. Kenner*, 784 A.2d 808, 811 (Pa. Super. 2001).

*Commonwealth v. Hill*, 210 A.3d 1104, 1116 (Pa. Super. 2019) (original brackets omitted).

Here, Appellant filed a timely notice of appeal. As previously noted, Appellant filed a post-sentence motion asking the trial court to reconsider his

sentence on May 1, 2025. The motion, however, only alleged the trial court's sentence was "harsh and excessive" in light of Appellant's "unfortunate upbringing," the non-violent nature of the instant matter, and Appellant's "resourcefulness and attempts at rehabilitation while incarcerated." Appellant's Post-Sentence Motion, 5/1/25 at ¶ 3. Hence, Appellant failed to raise in his post-trial motion his challenge to the consecutive nature of his sentence, or his claim that the trial court considered an improper factor during sentencing i.e., the CI's safety, resulting in waiver on appeal. *See id.* Thus, Appellant complied with the second requirement, but only for his claims alleging that the trial court failed to consider adequately his need for, and amenability to, rehabilitation. Hence, we shall confine our review accordingly. Appellant also complied with the third requirement of the four-part test by including a statement in his brief in conformity with Pa.R.A.P. 2119(f). We, therefore, proceed to determine whether Appellant raised a substantial question.

We have explained:

> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

*Moury*, 992 A.2d at 170 (internal citations and quotations omitted). "[T]his Court does not accept bald assertions of sentencing errors. An appellant must

articulate the reasons the sentencing court's actions violated the sentencing code." *Id.* (internal citations omitted). This Court previously determined that "an excessive sentence claim – in conjunction with an assertion that the court failed to consider mitigating factors – raises a substantial question." **Commonwealth v. Swope**, 123 A.3d 333, 339 (Pa. Super. 2015), *citing* **Commonwealth v. Raven**, 97 A.3d 1244, 1253 (Pa. Super. 2014); **see also Commonwealth v. Caldwell**, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*) (same). As such, we will review Appellant's sentencing claim.

Our standard of review of a challenge to the discretionary aspects of sentence is well-settled:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.
>
> In every case in which the court imposes a sentence for a felony or a misdemeanor, the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed.
>
> ***
>
> When imposing sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation. Where pre-sentence reports [("PSI report")] exist, we shall presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those

- 15 -

considerations along with mitigating statutory factors. A [PSI] report constitutes the record and speaks for itself.

***Commonwealth v. Antidormi***, 84 A.3d 736, 760-761 (Pa. Super. 2014) (internal citations, quotations, original brackets and ellipsis omitted). Moreover, when sentencing a defendant to total confinement, a trial court must impose a punishment consistent with 42 Pa.C.S.A. § 9721(b). Thus, the trial court "shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). "The court shall also consider any guidelines for sentencing and resentencing adopted by the Pennsylvania Commission on Sentencing and taking effect under [S]ection 2155 (relating to publication of guidelines for sentencing, resentencing and parole, risk assessment instrument and recommitment ranges following revocation)." ***Id.*** Where, as here, the trial court imposes a sentence within the applicable guidelines, this Court should vacate the sentence and remand only if the case involves circumstances in which the application of the guidelines would be clearly unreasonable. ***See*** 42 Pa.C.S.A. § 9781(c)(2).

Appellant is not entitled to relief. First, we note that, at sentencing, the trial court indicated it received and reviewed the PSI report, as well as the addendum attached to it which included "various certifications [Appellant] had received while incarcerated." N.T. Sentencing, 4/25/25, at 3. Hence, the trial

court, therefore, is presumed to "be aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." ***Commonwealth v. Antidormi***, 84 A.3d 736, 760-761 (Pa. Super. 2014) (internal citations, quotations, original brackets and ellipsis omitted).  Second, in contrast to Appellant's claims, it is apparent that the trial court took into consideration Appellant's amenability to rehabilitation, as well as his attempts at rehabilitation while incarcerated, in fixing Appellant's sentence.  At the sentencing hearing, the trial court stated:

> Sir, this is an aggregate sentence of 15 to 30 years to be served in a State correctional facility, again, with credit for time served from December [11, 2020 through] April [25, 2025].  You're going to be under supervision with the State parole for a very, very long time.  You will be a much older person when you are eligible to be released.
>
> It is the [c]ourt's hope that the diligence with which you've applied yourself at Chester County Prison to better yourself with the additional resources that the State facilities have, will better you as well.  Your defense attorney is absolutely right.  There's probably no one in this courtroom that knows the life you have lived.    That's  certainly  something  that  the  [c]ourt  has considered.
>
> But  the  [c]ourt  also  has  to  consider  the  danger  to  the community  and  the  gravity  of  the  offense,  namely  [the] significant quantities of very, very serious narcotics coming into the Chester County Community, and the affect that can have on the [residents] and good people of Chester County.
>
> The [c]ourt, in reading the PSI, hearing from yourself, your attorney, those who spoke on your behalf, believes that you are trying to make a better life for yourself.  It's in part [because] of your acceptance of responsibility and apology that you gave that your sentence is slightly less than what the Commonwealth very reasonably asked for; that you've actually made efforts in the past couple of years of incarceration to better yourself; that

- 17 -

you actually took responsibility after trial in your statement and PSI; as well before the [c]ourt today actually apologized.

The [c]ourt does not usually [hear] that often after trial. You did that. But I would be remiss as a Judge if I completely discounted, again, the protection of the public. And noting your significant prior history, that you were on supervision for these types of charges while these offenses were committed, a significant period of state incarceration – and this all within the standard range of the sentencing guidelines – is absolutely warranted in this case.

Again, it is the [c]ourt's hope – the [c]ourt is not giving up on you, sir – it is the [c]ourt's hope that whatever abilities you have within yourself, that you've already applied yourself in an incarcerated setting for betterment, that you will continue to use for your own betterment, nothing that you will be an older person when you are eligible to come out. You'll be in your 40s. One of the reasons why the [c]ourt wanted to make sure what your age was. And hopefully with a little bit of age will come a little bit of wisdom for you as well.

But if it doesn't, there's going to be a significant tail on you, and you're going to be subject to significant exposure of additional incarceration if and when – or when you get out and re[-]offenses happen.

N.T. Sentencing, 4/25/25, at 36-38. Hence, it is apparent that, in fashioning Appellant's sentence, the trial court did, in fact, considering mitigating factors as well as Appellant's rehabilitation efforts while incarcerated. The trial court, however, determined that the gravity of the offenses, the fact that Appellant committed the instant offenses while on probation, and the need for public protection, warranted a sentence of an aggregate term of 15 to 30 years' incarceration. We cannot say that, in so doing, the trial court committed an abuse of discretion.

Judgment of sentence affirmed.

- 18 -

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 6/8/2026